2012 UT 59

**STATE of Utah, Plaintiff and Petitioner, and Cross–Respondent,**

v.

**Patrick Robert RAMIREZ, Defendant and Respondent, and Cross–Petitioner.**

**Nos. 20110174, 20110135.**

Supreme Court of Utah.

Sept. 18, 2012.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, Eric R. Gentry, St. George, for petitioner.

Ryan D. Stout, Douglas D. Terry, Trevor D. Terry, St. George, for respondent.

Justice LEE, opinion of the Court:

¶ 1 Patrick Robert Ramirez was charged with possession of methamphetamine and drug paraphernalia, but the district court declined to bind him over for trial at a preliminary hearing. The State appealed, and a divided court of appeals affirmed. We now reverse, correcting what we see as errors in the lower courts' articulation and application of the probable cause standard that applies in a preliminary hearing.

I

¶ 2 While in jail on drug charges in Washington County, Ramirez directed a woman on the other end of a phone call to go to his motel room and "retrieve a glass pipe before the manager could find it." Ramirez asked the woman to take the pipe to the police, suggesting that it was "clean" and "would clear his name" of his pending drug charges. Upon overhearing this call, the jailor arranged for Ramirez to talk on the phone with a member of the Washington County Drug Task Force. Ramirez invited the task force to search for the pipe in his motel room, reiterating that the pipe would somehow "clear his name."

¶ 3 Ramirez stayed on the phone with the officers while they entered the motel room with the manager and searched for the pipe. Officers found the pipe on the bed under the covers, exactly where Ramirez said they would find it. It was of "the type commonly used to ingest controlled substances" and did not appear to have been used. When officers asked Ramirez why he had the unused pipe, he replied, "I'm going to be honest with you, . . . I have a problem." He also added that he had a clean, unused syringe on him when arrested, because he liked to "ram" or "slam" (inject) his drugs.

¶ 4 When officers asked if they could search the rest of Ramirez's room, he said, "Yeah, go ahead. There won't be anything there." But inside a trash bag hanging in the kitchen officers found a corner of a baggie and a short "tube" straw. Both the baggie and straw had methamphetamine residue on them. There was no indication that anyone other than Ramirez had occupied the motel room. The officers, moreover, found paperwork and a prescription bottle with Ramirez's name on it. And they found nothing identified as belonging to anyone else. The officer acknowledged, however, that the manager, who let them in, could have had prior access to the room and "imagined" that the housekeeping staff also could have had prior access to the room.

¶ 5 At the subsequent preliminary hearing on drug charges against Ramirez for use or possession of a controlled substance and for possession of drug paraphernalia, the magistrate refused to bind Ramirez over for trial. In so doing, the court found probable cause to believe that Ramirez had dominion or

control over the motel room at some point before the search, but opined that there was no evidence that Ramirez had knowledge that the drug residue and paraphernalia were present in the motel room either when he was personally present in the room or when officers searched the room. He also concluded that "every reasonable inference from the evidence" was that Ramirez "did not know of the presence of the drug residue and paraphernalia." "Without knowledge of the presence of the contraband," the judge concluded that he "could not infer that Defendant intended to exercise control over the contraband" and that "without evidence of an intent to exercise control, there can be no inference of possession of drug residue or paraphernalia." In the judge's view, "it's a stronger inference [Ramirez] didn't know the drugs were there, or he wouldn't have sent the police officers to that place to look around." He also indicated, "I am well-acquainted with this Defendant, having recently sentenced him to multiple terms of incarceration at the Utah State Prison. He purports to be familiar with police investigations and with his rights in those investigations."

¶ 6 The court of appeals affirmed on a 2–1 vote. Judge Orme (joined by Judge McHugh) concluded that "the critical piece missing from the State's presentation was evidence showing the nature and character of the motel, or of Defendant's room in particular, and the exclusivity of his control and access." *State v. Ramirez*, 2010 UT App 373U, para. 4, 2010 WL 5452079. Without testimony from the manager, the majority thought that the State's contentions about exclusivity were mere "speculations—albeit plausible ones—rather than inferences logically drawn from the evidence actually before the magistrate." *Id.* Judge Thorne dissented, asserting that the preliminary hearing gave rise to two alternative, but conflicting, reasonable inferences. *Id.* para. 7 (Thorne, J., dissenting). From the fact that Ramirez directed the search of his room, one inference could be that he did not know the methamphetamine residue was there. But

other facts gave rise to an alternative inference—that he knew the meth was there but thought it would not be discovered because he had properly discarded it before leaving his room. And in Judge Thorne's view, conflicting inferences had to be resolved in favor of the prosecution, since the bindover standard is low and reserves the principal fact-finding for trial. *Id.* para. 8.

¶ 7 The case is before us now on the State's dual petition for certiorari. Our certiorari review of the court of appeals' decision is de novo, affording no deference to that court's evaluation of the question whether there was probable cause to bind Ramirez over for trial. *See Brown v. Div. of Water Rights of Dep't of Natural Res.*, 2010 UT 14, ¶ 9, 228 P.3d 747. Yet "[t]he correctness of the court of appeals' decision turns, in part, on whether it accurately reviewed the trial court's decision under the appropriate standard of review." *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096. "[I]n the bindover context a magistrate's authority to make credibility determinations is limited." *State v. Virgin*, 2006 UT 29, ¶ 34, 137 P.3d 787. Thus, "an appellate court should grant commensurate limited deference to a magistrate's application of the bindover standard to the facts of each case." *Id.; State v. I.R.C (State ex rel. I.R.C.)*, 2010 UT 41, ¶ 12, 232 P.3d 1040 (stating that a court's bindover decision "presents a mixed question of law and fact"). Applying the wrong legal standard, however, will always exceed whatever limited discretion the magistrate has in the bindover decision. *See Featherstone v. Schaerrer*, 2001 UT 86, ¶ 41, 34 P.3d 194 (holding that a trial court abused its discretion by applying the wrong legal standard).[1]

## II

¶ 8 The preliminary hearing is a fundamental procedural right guaranteed by article I, section 13 of the Utah Constitution. For offenses covered by this provision, a defendant may be bound over for trial only if the prosecution produces evidence sufficient

---

1. *See also State v. Rafay*, 167 Wash.2d 644, 222 P.3d 86, 91 (2009) ("A discretionary decision is based on untenable grounds...if it...was reached by applying the wrong legal standard." (internal quotation marks omitted)).

to demonstrate "probable cause" that the charged crimes were committed. *State v. Hernandez*, 2011 UT 70, ¶ 18, 268 P.3d 822 ("[T]he plain language of article I, section 13 refers to offenses that were previously indictable under Utah territorial law."). This guarantee is aimed at "ferreting out groundless and improvident prosecutions," "reliev[ing] the accused from the substantial degradation and expense incident to a modern criminal trial when the charges against him are unwarranted or the evidence insufficient." *State v. Virgin*, 2006 UT 29, ¶ 20, 137 P.3d 787 (internal quotation marks omitted).

■ ¶ 9 Although the guarantee of a preliminary hearing is fundamental, the evidentiary threshold at such hearing is relatively low. As we have emphasized, a showing of "probable cause" entails only the presentation of "evidence sufficient to support a reasonable belief that the defendant committed the charged crime." *Id.* ¶ 17. The "reasonable belief" formulation parallels the standard for an arrest warrant. *Id.* ¶ 18. Thus, to justify binding a defendant over for trial, the prosecution need not present evidence "capable of supporting a finding of guilt beyond a reasonable doubt." *Id.* ¶ 20 (internal quotation marks omitted). Nor is the prosecution required to eliminate alternative inferences that could be drawn from the evidence in favor of the defense. All that is required is reasonably believable evidence—as opposed to speculation—sufficient to sustain each element of the crime(s) in question. *See id.* ¶¶ 21–22 (noting that the magistrate "may decline bindover if the prosecution fails to present sufficiently credible evidence on at least one element of the crime" or "where the facts presented by the prosecution provide no more than a basis for speculation," and explaining that "at some level of inconsisten-

cy or incredibility, evidence becomes incapable of satisfying the probable cause standard").

■ ¶ 10 At the preliminary hearing, the magistrate is tasked only with assuring that there is evidence that could sustain a reasonable inference in the prosecution's favor on each element of the crime(s) in question. That role does not encompass an assessment of whether such inference is more plausible than an alternative that cuts in favor of the defense. That is a matter of factfinding, which is left for the jury at trial. *Id.* ¶ 21.

■ ¶ 11 The prosecution carried its burden in this case. By demonstrating that methamphetamine and paraphernalia were found in Ramirez's motel room, the prosecution presented reasonably believable evidence on each of the elements of the crimes in question.[2] That evidence included the fact that police officers found the glass pipe exactly where Ramirez predicted they would, that when asked to explain the pipe, Ramirez openly admitted that he had a drug problem, and that officers found material belonging to Ramirez (and to no one else) in the room where they found the drugs and paraphernalia.

¶ 12 The magistrate's (and court of appeals majority's) concerns with this evidence are insufficient to foreclose a finding of probable cause. First, we cannot agree that there was "no evidence" that Ramirez had control over or knowledge of drug residue and paraphernalia in the motel room. Such evidence was admittedly circumstantial—to be inferred from his predictions about the location of the pipe, from his response to police officers' questions, and from identifying material found in the room.[3] But circumstantial evi-

---

2. *See* Utah Code § 58–37–8(2)(a)(i) ("It is unlawful . . . for any person knowingly and intentionally to possess or use a controlled substance analog or a controlled substance. . . ."); *id.* § 58–37a–5(1)(a) ("It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia. . . ."); *id.* § 58–37–2(1)(ii) (" 'Possession' . . . means the joint or individual ownership, control, occupancy, holding, retaining, belonging, [or] maintaining . . . of controlled substances and includes individual, joint, or group possession. . . . For a person to be a possessor . . . of a controlled substance, it is not required that the person be

shown to have individually possessed, used, or controlled the substance, but it is sufficient if it is shown that . . . the controlled substance is found in a place or under circumstances indicating that the person had the ability and the intent to exercise dominion and control over it.").

3. These inferences persuade us that "there was a sufficient nexus between the defendant and the drugs or paraphernalia to permit a factual inference that the defendant had the power and the intent to exercise control over the drugs or paraphernalia." *State v. Layman*, 1999 UT 79, ¶ 15,

dence is routinely admitted and considered by juries in criminal courtrooms.[4] And so long as the inferences flowing from such evidence are reasonable, circumstantial evidence can certainly sustain the probable cause necessary to bind a defendant over for trial.

¶ 13 Second, we think the magistrate and the court of appeals overstepped their bounds in rejecting the inference put forward by the prosecution in favor of the alternative suggested by Ramirez. The choice between two alternative, reasonable inferences is a matter for the factfinder at trial, not for the magistrate at the preliminary hearing. Thus, it was not the magistrate's prerogative to favor the inference that Ramirez "didn't know the drugs were there" as "stronger" than the prosecution's alternative. The relative strength of the competing inferences in this case was a question for the jury at trial. It was not a proper basis to decline to bind the defendant over for trial.

¶ 14 The lack of evidence concerning the "exclusivity" of Ramirez's "control and access" to the motel room likewise does not defeat the prosecution's showing of probable cause. *State v. Ramirez*, 2010 UT App 373U, para. 4, 2010 WL 5452079. It does not follow from the lack of such evidence that an inference of Ramirez's knowledge of or control over the contents of the motel room amounted to mere "speculations ... rather than inferences logically drawn from the evidence actually before the magistrate." *Id.* Instead, as Judge Thorne put it, the evidence at the preliminary hearing sustained "two reasonable alternate inferences." *Id.* para. 7 (Thorne, J., dissenting). The fact that Ramirez directed police officers to search the room could suggest that he did not know that the drugs were there, but it could also suggest that he knew it was there but thought it

unlikely the officers would find it because he had discarded or effectively hidden it. *Id.* (Thorne, J., dissenting). It was not for the magistrate to reject the latter inference in favor of the former—unless he could conclude the latter fell to a "level of inconsistency or incredibility" that no reasonable jury could accept it. *Virgin*, 2006 UT 29, ¶ 22, 137 P.3d 787.

¶ 15 No such conclusion was possible on this record. The magistrate concluded that a suspect who was aware of drugs in his room "wouldn't have sent the police officers to that place to look around." But a reasonable jury could accept a contrary inference given the well-known propensity of criminal suspects to accede to search requests even when they know the search will incriminate them. *See* Daniel L. Rotenberg, *An Essay on Consent(less) Police Searches*, 69 Wash. U. L.Q. 175, 187 n.58 (1991) (noting that "[t]he consenter may want to get caught. He may think that by cooperating the police will go easy on him; he may believe that he has hidden any incriminating evidence so well that it is beyond the ability of the police to find it").[5] The same can be said of the magistrate's conclusion that Ramirez's "familiar[ity] with police investigations and with his rights in those investigations" enhanced the credibility of his insistence that he lacked knowledge or control over the contents of the motel room. Again, a contrary inference is not so inconsistent and so incredible that a jury could not consider it possible given the defendant's confused mindset in the phone call that incited the investigation in this case. A defendant who thinks that a "clean" glass pipe will "clear his name" of pending drug charges may not necessarily be seen as a thoughtful expert with knowledge of police work. In the face of two competing inferences that could reasonably be accepted at trial, the magistrate should have bound the

---

985 P.2d 911. They likewise lead us to reject Ramirez's assertion that the prosecution's only evidence was "that [] Ramirez had rented the motel room at *some point*."

4. *See State v. Nickles*, 728 P.2d 123, 126 (Utah 1986) ("[I]t is a well-settled rule that circumstantial evidence alone may be sufficient to establish the guilt of the accused."); *State v. Shabata*, 678 P.2d 785, 790–91 (Utah 1984) (upholding conviction based entirely upon circumstantial evidence).

5. *See also State v. Gomez*, 2012 UT App 102, ¶ 4, 275 P.3d 1073 (defendant consented to search of hotel room that yielded drugs and paraphernalia the defendant admitted were his); *State v. Adams*, 2007 UT App 117, ¶ 5, 158 P.3d 1134 (defendant consented to search of his person that yielded drug paraphernalia).

matter over for trial. It is not for the court to choose between competing reasonable inferences from the evidence presented at a preliminary hearing.

¶ 16 Granted, the prosecution could have presented more evidence connecting Ramirez to the contraband in the motel room—e.g., by calling a witness like the motel manager to testify, as the court of appeals majority suggested, about the "nature and character of the motel, or of Defendant's room in particular." *Ramirez*, 2010 UT App 373U, para. 4, 2010 WL 5452079. But such testimony can hardly be deemed "critical" to binding the case over for trial. *Id.* The evidence that was presented sustained a reasonable, non-speculative basis for the jury to find against Ramirez on each of the elements of his crimes, and the absence of additional evidence is simply beside the point.

¶ 17 It is not the court's role in a preliminary hearing to hold the prosecution to the presentation of a comprehensive or "best" case against the accused. In this case the magistrate and the court of appeals did just that, while weighing competing inferences and engaging in factfinding, ultimately siding with the defense. We reverse that decision as erroneous and remand with a mandate to bind Ramirez over for trial.

Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice PARRISH joined.