2013 UT App 110

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellant,*
*v.*
BENJAMIN JAY GRAHAM,
*Defendant and Appellee.*

Opinion
No. 20110509-CA
Filed May 2, 2013

Fourth District, Provo Department
The Honorable Claudia Laycock
No. 091402829

John E. Swallow, Karen A. Klucznik, and
Craig L. Barlow,
Attorneys for Appellant
Edward K. Brass, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGES GREGORY K. ORME
and WILLIAM A. THORNE JR. concurred.

CHRISTIANSEN, Judge:

¶1　The State charged Defendant Benjamin Jay Graham (Defendant) with multiple counts of communications fraud, theft, and unlawful pattern of activity. Following the preliminary hearing, the magistrate granted Defendant's motion to dismiss all of the charges based on insufficient evidence. The State appeals the

magistrate's refusal to bind Defendant over on one count of second degree felony theft. We reverse and remand.

BACKGROUND[1]

¶2      In the spring of 2005, the owner of Graham Ironworks, Rodger Graham (Defendant's Father),[2] approached the chief executive officer of Marinda Holdings (Investor) about a potential business opportunity involving the salvage and resale of wood reclaimed from the site of a former steel mill. Defendant's Father asked Investor for a total investment of $500,000 to start this business—$250,000 to purchase the salvage rights, and another $250,000 to remove the wood. Defendant's Father also told Investor that the salvaged wood was worth "anywhere from 5 to 8 million bucks." Investor agreed to work with Defendant's Father on the salvage project, mainly because he viewed it as an opportunity to involve his son (Investor's Son) in a business. Defendant's Father indicated that he would also like his son, Defendant, to be involved in the project.

¶3      Defendant's Father and Investor decided that their sons would co-own the salvage business, though Defendant's Father would be the "brains" behind the operation because neither young man had much business experience. Investor agreed to provide the financing, and thereafter, the parties formed Green Harvest Materials, Inc. (Green Harvest). Investor's Son, as co-owner, was to

---

1. At a preliminary hearing, "[t]he magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *State v. Hawatmeh*, 2001 UT 51, ¶ 3, 26 P.3d 223 (citation and internal quotation marks omitted). We state the facts here accordingly. *See id.*

2. Defendant's Father is a defendant in a related case. *See State v. Graham*, 2013 UT App 109.

be in charge of marketing, and Defendant, as the other co-owner, was to be in charge of operations. They hired an assistant to serve as Green Harvest's secretary and office manager (Office Manager). Office Manager's responsibilities included collecting all receipts from debit card purchases on the company's bank account, purchasing office supplies, and paying all invoices presented to Green Harvest. Shortly after the company's formation, Investor began making substantial payments to Graham Ironworks and Green Harvest. Defendant, Investor's Son, and Office Manager were all listed as signatories on Green Harvest's bank account, and each had a company debit card. All three individuals could also unilaterally authorize wire transfers.

¶4     No written company policy was ever created to address the appropriate uses of the company's debit cards. However,  Office Manager testified at the preliminary hearing that several conversations took place among the signatories regarding the parameters of appropriate use of the company debit cards. Office Manager explained that the three individuals discussed how "charges for cigarettes or food weren't appropriate for card use. That [the debit card] was strictly for business purposes and necessary . . . related costs of the business and not personal expenses." In contrast, Investor's Son testified at the preliminary hearing that no such discussion had taken place prior to November 2005. Specifically, he testified that he did not "think [any of the signatories] had a formal conversation about [the appropriate uses of the company debit card]" prior to November 2005.

¶5     In November 2005, Defendant traveled to Mexico with his family for a personal vacation. While there, he used his company debit card and spent over $7,500 on rental car fees. Office Manager noticed the charges and brought them to the attention of Investor's Son, who immediately contacted Defendant about the personal expenditures charged to the Green Harvest account. Defendant told Investor's Son that he used his company debit card in Mexico only because he and his family had been caught in a hurricane, he had left his personal credit card at home, and he was "desperate."

Investor's Son indicated that even though he understood Defendant's predicament, he believed that Defendant had inappropriately used the company debit card. Investor's Son also told Defendant that "[i]t's company money," that the charges in Mexico did not "have anything to do with [their] business," and that, therefore, Defendant should not have used business funds for personal expenditures. Defendant agreed to pay the money back to Green Harvest. However, and quite tellingly, Defendant has never repaid the amount due pursuant to what he characterized as a short term loan necessitated by the happenstance that he had forgotten his personal card. Additionally, a certified weather report submitted by the State at the preliminary hearing revealed that no hurricane or other notable weather phenomenon was reported in Mexico during the time of Defendant's trip.

¶6     In addition to multiple counts of communications fraud and unlawful pattern of activity, the State subsequently charged Defendant with theft, a second degree felony, based upon the use of his Green Harvest debit card for personal expenses in Mexico and his failure to repay that amount. *See generally* Utah Code Ann. § 76-6-412(1)(a)(i) (LexisNexis 2012)[3] (classifying a theft offense as a second degree felony when "the value of the property or services [that have been stolen] is or exceeds $5,000"). Following his preliminary hearing, Defendant filed a motion to dismiss all of the charges for insufficient evidence. The magistrate granted the motion, and as to the theft charge at issue on appeal, the magistrate ruled that before Defendant had used the company debit card while on vacation, "there were no policies in place at Green Harvest forbidding personal use of the [debit] card" and that Investor's Son "ratified the transaction by agreeing to let [Defendant] repay the money." Therefore, the magistrate determined that "the State failed to show the first element of theft

---

3. Because the relevant statutory provisions have not materially changed, we cite the most current version of the Utah Code throughout this opinion.

because there is no evidence that [Defendant] exercised unauthorized control over any property." *See id*. § 76-6-404 ("A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof."). The State appeals.

ISSUE AND STANDARD OF REVIEW

¶7     The sole issue on appeal is whether the magistrate incorrectly refused to bind Defendant over on the theft charge following the preliminary hearing. "A [magistrate's] decision to bind over a criminal defendant for trial presents a mixed question of law and fact and requires the application of the appropriate bindover standard to the underlying factual findings." *In re I.R.C.*, 2010 UT 41, ¶ 12, 232 P.3d 1040. Thus, "an appellate court should grant commensurate limited deference to a magistrate's application of the bindover standard to the facts of each case." *State v. Virgin*, 2006 UT 29, ¶ 34, 137 P.3d 787. "Applying the wrong legal standard, however, will always exceed whatever limited discretion the magistrate has in the bindover decision." *State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444.

ANALYSIS

I. The Bindover Standard

¶8     To support the bindover of a defendant for trial, the prosecution must put forward enough evidence at the preliminary hearing to establish probable cause. *See* Utah R. Crim. P. 7(i)(2) (allowing for bindover when the magistrate "finds probable cause to believe that the crime charged has been committed and that the defendant has committed it"); *see also Virgin*, 2006 UT 29, ¶ 17. "[A] showing of 'probable cause' entails only the presentation of 'evidence sufficient to support a reasonable belief that the defendant committed the charged crime.'" *Ramirez*, 2012 UT 59, ¶ 9

(quoting *Virgin,* 2006 UT 29, ¶ 17). A "reasonable belief" in this context parallels the standard for an arrest warrant, meaning that the level of evidence that the prosecution must show is less than what is required to find guilt beyond a reasonable doubt. *Id.* Indeed, "[a]ll that is required is reasonably believable evidence—as opposed to speculation—sufficient to sustain each element of the crime(s) in question." *Id.* "Inclusion of the word 'reasonable' in this standard suggests that, at some level of inconsistency or incredibility, evidence becomes incapable of satisfying the probable cause standard. When that is the case, magistrates are empowered to deny bindover." *Virgin*, 2006 UT 29, ¶ 22.

¶9      At a preliminary hearing, the magistrate is not to weigh or sift through conflicting evidence. *See State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300. Rather, the "magistrate must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *Id.* (citation and internal quotation marks omitted). Indeed, the magistrate's "role does not encompass an assessment of whether such inference[s are] more plausible than an alternative that cuts in favor of the defense" because "the choice between two alternative, reasonable inferences is a matter for the factfinder at trial, not for the magistrate at the preliminary hearing." *Ramirez*, 2012 UT 59, ¶¶ 10, 13. Though it is true that a magistrate may make some initial credibility determinations at the preliminary hearing, "the extent of those determinations is limited." *Virgin*, 2006 UT 29, ¶ 24. The magistrate "may [only] disregard or discredit evidence that is wholly lacking and incapable of creating a reasonable inference regarding a portion of the prosecution's case" or evidence that is "so contradictory, inconsistent, or unbelievable that it is unreasonable to base belief of an element of the prosecutor's claim on that evidence." *Id.* ¶¶ 24–25 (citation and internal quotation marks omitted). However, when the evidence conflicts but is otherwise credible, it is inappropriate for the magistrate to weigh or disregard that evidence at the preliminary hearing. *Id.*

II. The Evidence Presented at the Preliminary Hearing

¶10     To properly bind Defendant over on the second degree theft count, the evidence must support a reasonable belief that (1) Defendant obtained or exercised unauthorized control; (2) over the property of Green Harvest; (3) with a purpose to permanently deprive Green Harvest of that property; and (4) the property has a value equal to or exceeding $5,000. *See* Utah Code Ann. §§ 76-6-404, -412(1)(a)(i). The magistrate dismissed the theft count because the State failed to prove the first of these four elements--unauthorized control. Specifically, the magistrate determined,

> The State argues that [Defendant] exercised unauthorized control over the Green Harvest Credit Card when he charged $7,569.45 for the rental car. However, the evidence presented shows the exact opposite. Before [Defendant] used the credit card on vacation, there were no policies in place at Green Harvest forbidding personal use of the credit card. Furthermore, . . . [Investor's Son] ratified the transaction by agreeing to let [Defendant] repay the money. Thus, the evidence only shows that [Defendant] owed Green Harvest $7,569.45. Consequently, the State failed to show the first element of theft because there is no evidence that [Defendant] exercised unauthorized control over any property.

¶11     We determine that the prosecution carried its burden at the preliminary hearing. The key piece of evidence presented by the State was Officer Manager's testimony that Office Manager, Investor's Son, and Defendant had discussed the appropriate uses and parameters of the company debit cards prior to Defendant's vacation to Mexico. Office Manager testified at the preliminary hearing that they had several conversations and that, based on those conversations, Defendant was on notice that he was not

authorized to use his company debit card for personal expenditures.

¶12    In viewing the evidence in the light most favorable to the prosecution, Office Manager's testimony demonstrates that Defendant should have known prior to leaving for his Mexican vacation that he was not authorized to use his company debit card for personal expenditures. This evidence was sufficient to support a reasonable belief that Defendant exercised unauthorized control over the Green Harvest debit card. In addition, reasonably believable evidence suggests that Defendant intentionally misrepresented to Investor's Son the existence of a hurricane. Defendant would have no need to lie about a hurricane if he truly believed he was authorized to use his card for personal reasons. It appears that if Defendant's story about the hurricane were true, he would have immediately disclosed his use of the debit card to Investor's son upon his return and made arrangements to pay back the company. These facts demonstrate that the State introduced sufficient evidence that Defendant exercised unauthorized control over the company debit card and intended to deprive the company of those funds when he failed to repay them.

### III. Whether the Magistrate Acted Within Her Discretion in Not Binding Defendant Over for Trial

¶13    In making her bindover decision, it appears that the magistrate disregarded Office Manager's testimony when she found that "there were no policies in place at Green Harvest forbidding personal use of the credit card." Although a magistrate is entitled to make "some limited credibility determinations at the preliminary hearing," the magistrate may only disregard testimonial evidence when it is "wholly lacking and incapable of creating a reasonable inference regarding a portion of the prosecution's case," *State v. Virgin*, 2006 UT 29, ¶¶ 23–24, 137 P.3d 787 (citation and internal quotation marks omitted), or if the evidence falls "to a level of inconsistency or incredibility that no reasonable jury could accept it," *State v. Ramirez*, 2012 UT 59, ¶ 14,

289 P.3d 444 (citation and internal quotations marks omitted). On the record before us, Office Manager's testimony does not appear to be patently inconsistent or incredible. Accordingly, "[i]t is inappropriate for [the] magistrate to weigh credible but conflicting evidence at a preliminary hearing as a preliminary hearing is not a trial on the merits but a gateway to the finder of fact." *Virgin*, 2006 UT 29, ¶ 24 (citation and internal quotation marks omitted).

¶14 Though Investor's Son testified at the preliminary hearing that no conversations regarding appropriate use of the company debit cards had taken place prior to Defendant's trip, his testimony conflicts with Office Manager's testimony. Evaluating the competing testimony of witnesses is the function of the factfinder, not the magistrate. Thus, it was error for the magistrate to reject Office Manager's version of the facts in favor of Investor's son's version. Resolution of this evidentiary conflict should have been left to the factfinder at trial.

¶15 The State analogizes the facts of this case to those of *State v. Ramirez*, 2012 UT 59, 289 P.3d 444. In that case, the magistrate refused to bind the defendant over on drug possession charges after considering the evidence presented at the preliminary hearing. *Id.* ¶ 5. The evidence included drug paraphernalia containing drug residue located in a motel room in the exact location the defendant had directed and permitted officers to search and the defendant's admission to having a drug problem. *Id.* ¶¶ 2–5, 11. The magistrate "opined that there was no evidence that Ramirez had knowledge that the drug residue and paraphernalia were present in the motel room either when he was personally present in the room or when officers searched the room." *Id.* ¶ 11. Therefore, the magistrate was faced with a choice between two competing inferences based on the evidence. In the magistrate's view, "it [was] a stronger inference [that the defendant] didn't know the drugs were there, or he wouldn't have sent the police officers to that place to look around." *Id.* ¶ 5 (internal quotation marks omitted).

¶16    In reversing the magistrate's decision to refuse bindover, the Utah Supreme Court explained that there was sufficient evidence, though circumstantial, to find probable cause in support of the charges against the defendant and that the magistrate erred by rejecting the inference put forward by the prosecution because "[t]he relative strength of the competing inferences in the case was a question for the jury at trial." *Id.* ¶ 13. The court acknowledged that the prosecution could have presented more evidence connecting Ramirez to the contraband in the motel room. *Id.* ¶ 16. However, the court also made clear that "it is not the [magistrate's] role in a preliminary hearing to hold the prosecution to the presentation of a comprehensive or 'best' case against the accused." *Id.* ¶ 17.

¶17    Here, similar to *Ramirez*, the magistrate was faced with two competing, reasonable inferences to be derived from the evidence presented at the preliminary hearing. On one hand, the theft charges are supported by Office Manager's testimony that Defendant should have been aware that using his company debit card for personal expenses was not allowed. In addition, Defendant's dishonesty regarding the hurricane and his failure to reimburse the company for his personal expenses suggest that he intended to deprive Green Harvest of its funds. On the other hand, Defendant's behavior can be explained by Investor's Son's testimony that no conversation had taken place prior to Defendant's trip regarding the appropriate use of the company debit cards.

¶18    We determine that the magistrate erred in denying bindover and in granting Defendant's motion to dismiss. As explained above, an evidentiary conflict should be resolved by the jury at trial because, first, the magistrate is bound to "view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (citation and internal quotation marks omitted). Second, "[i]n the face of two competing inferences that could reasonably be accepted at trial, the magistrate should have

bound the matter over for trial. It is not for the [magistrate] to choose between competing reasonable inferences from the evidence presented at a preliminary hearing." *Ramirez,* 2012 UT 59, ¶ 15. Here, the magistrate erred by drawing inferences from the evidence in favor of the defense. Because both the prosecution and the defense advanced reasonable inferences derived from the evidence, the magistrate should have allowed the jury to resolve the conflict.

¶19   Certainly, the prosecution's evidence could be stronger, but the prosecution is not required to present a "comprehensive or 'best' case against the accused" at the preliminary hearing. *See id.* ¶ 17. The question is only whether the evidence is "'sufficient to support a reasonable belief that . . . [D]efendant committed the charged crime.'" *See id.* ¶ 9 (quoting *Virgin,* 2006 UT 29, ¶ 17). In this case, the totality of the evidence and the inferences drawn therefrom were sufficient to support a reasonable, non-speculative belief that Defendant committed the theft alleged by the State. Accordingly, we hold that the magistrate erred in refusing to bind Defendant over on the theft charge.[4]

---

4. We take note of Defendant's argument that the bindover determination is not a mere "rubber stamp for the prosecution," *State v. Hester,* 2000 UT App 159, ¶ 7, 3 P.3d 725, *abrogated on other grounds by State v. Clark*, 2001 UT 9, ¶ 14, 20 P.3d 300, and that magistrates must "attempt to ensure that all 'groundless and improvident prosecutions' are ferreted out no later than the preliminary hearing," *Clark,* 2001 UT 9, ¶ 10 (quoting *Hester*, 2000 UT App 159, ¶ 7). Though the evidence in this case could be stronger, the facts presented at the preliminary hearing were sufficient to support a finding of probable cause for theft. Thus, this case does not present a "groundless and improvident prosecution." *See id.*

CONCLUSION

¶20    Though it could have been stronger, the evidence presented by the prosecution at the preliminary hearing meets the probable cause standard for second degree felony theft. Accordingly, we reverse and remand with instructions to bind Defendant over for trial.

———