**2013 UT App 109**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellant,*
*v.*
RODGER MARTIN GRAHAM,
*Defendant and Appellee.*

Opinion
No. 20110492-CA
Filed May 2, 2013

Fourth District, Provo Department
The Honorable Claudia Laycock
No. 091402828

John E. Swallow, Karen A. Klucznik, and
Craig L. Barlow, Attorneys for Appellant
Ronald J. Yengich, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGES GREGORY K. ORME and
WILLIAM A. THORNE JR. concurred.

CHRISTIANSEN, Judge:

¶1 The State appeals from a magistrate's order declining to bind over Defendant Rodger Martin Graham (Defendant) on three counts of communications fraud. We affirm.

BACKGROUND[1]

¶2     In the spring of 2005, Defendant approached Investor to attempt to secure Investor's investment in a potential business opportunity involving the salvage and sale of wood reclaimed from the site of a former steel mill. Defendant told Investor that it would cost $250,000 to purchase the salvage rights and another $250,000 to remove the wood. Defendant also told Investor that the salvaged wood would be worth "anywhere from 5 to 8 million bucks." Investor agreed to contribute to Defendant's salvage project, mainly because he viewed it as an opportunity to involve his son (Investor's Son) in a business. Defendant indicated that he would also like his son, Benjamin Jay Graham (Defendant's Son),[2] to be included in the project.

¶3     Investor and Defendant decided that their sons would co-own the salvage business, though Defendant would be the "brains" behind the operation because neither of the young men had much business experience. Investor agreed to provide the financing, and soon thereafter he and Defendant formed Green Harvest Materials, Inc. (Green Harvest). Investor's Son, as co-owner, was to be in charge of marketing and Defendant's Son, as the other co-owner, was to be in charge of operations. They hired an assistant to serve as Green Harvest's secretary and office manager (Office Manager). Office Manager's responsibilities included collecting all receipts from debit card purchases on the company's bank account, purchasing office supplies, and paying all invoices that came

---

1. At a preliminary hearing, "[t]he magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *State v. Hawatmeh*, 2001 UT 51, ¶ 3, 26 P.3d 223 (citation and internal quotation marks omitted). We state the facts here accordingly.

2. Defendant's Son is a defendant in a related case. *See State v. Graham*, 2013 UT App 110.

through Green Harvest. Shortly after the company's formation, Investor began paying substantial amounts of money to Defendant's business, Graham Ironworks, and to Green Harvest. While most of Investor's contributions constituted investment capital in Green Harvest, other funds were designated as loans to Green Harvest.

¶4    Defendant mentored Defendant's Son in the daily work of removing the salvaged materials from the buildings at the site. As the work proceeded, it became common practice for Defendant to pay for daily operating expenses and then seek reimbursement from Green Harvest. Defendant billed Green Harvest through Graham Ironworks. On three separate occasions, Defendant sent invoices to Green Harvest seeking reimbursement for costs associated with asbestos removal at the salvage site. Neither Defendant nor Graham Ironworks possessed a license to remove asbestos. Defendant hired another company, CST, and its subcontractors, to do all the asbestos removal. Defendant presented three invoices to Green Harvest and requested reimbursement in the amount of $11,500, $23,925, and $23,500 for asbestos removal.

¶5    By November 20, 2006, Investor and Green Harvest had deposited a total of $871,934.51 into Graham Ironworks's checking account. Also, in the three years that Green Harvest was in existence, it never sold any salvaged materials. Neither Defendant nor Green Harvest ever paid any money to Investor in return for his investment and loans.

¶6    On September 30, 2009, the State charged Defendant with multiple counts of securities fraud, communications fraud, theft, and pattern of unlawful activity, all stemming from his involvement with the steel mill salvage site. Following the preliminary hearing, the State sought dismissal of seven counts of the information. In addition, the magistrate refused to bind Defendant over on eight counts, including communications fraud

counts 12, 16, and 17, which are the subject of this appeal.[3] *See generally* Utah Code Ann. § 76-10-1801 (LexisNexis 2012) (communications fraud statute).[4] Each of the three counts corresponds to a separate invoice for asbestos removal sent by Defendant and Graham Ironworks to Green Harvest. In dismissing the counts, the magistrate found that "[t]he State [did] not present[] enough facts to establish the second element of communications fraud." *See id.* § 76-10-1801(1) (explaining that a person is guilty of communications fraud when that person uses a scheme or artifice "to obtain from another money, property, or anything of value by means of false or fraudulent pretenses, representations, promises, or material omissions"). The State appeals.

ISSUE AND STANDARD OF REVIEW

¶7     The sole issue on appeal is whether the magistrate incorrectly refused to bind over Defendant on communications fraud counts 12, 16, and 17 following the preliminary hearing. "A [magistrate's] decision to bind over a criminal defendant for trial presents a mixed question of law and fact and requires the application of the appropriate bindover standard to the underlying factual findings." *In re I.R.C.*, 2010 UT 41, ¶ 12, 232 P.3d 1040. Thus, "an appellate court should grant commensurate limited deference to a magistrate's application of the bindover standard to the facts of each case." *State v. Virgin*, 2006 UT 29, ¶ 34, 137 P.3d 787.

---

3. The magistrate bound Defendant over on one count of securities fraud (count 1); three counts of communications fraud (counts 2, 5, and 20); one count of theft (count 3); and one count of pattern of unlawful activity (count 25).

4. Because the relevant statutory provisions have not changed in a way material to our analysis, we cite the most current version of the Utah Code throughout this opinion.

ANALYSIS

I. The Bindover Standard

¶8      To support the bindover of a defendant for trial, the prosecution must put forward enough evidence at the preliminary hearing to establish probable cause. *See* Utah R. Crim. P. 7(i)(2) (allowing for bindover when the magistrate "finds probable cause to believe that the crime charged has been committed and that the defendant has committed it"); *see also Virgin*, 2006 UT 29, ¶ 17. "[A] showing of 'probable cause' entails only the presentation of 'evidence sufficient to support a reasonable belief that the defendant committed the charged crime.'" *State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444 (quoting *Virgin*, 2006 UT 29, ¶ 17). A "reasonable belief" in this context parallels the standard for an arrest warrant, meaning that the level of evidence that the prosecution must show is less than that required to prove guilt beyond a reasonable doubt. *Id*. "All that is required is reasonably believable evidence—as opposed to speculation—sufficient to sustain each element of the crime(s) in question." *Id.* Also, the "magistrate must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (citation and internal quotation marks omitted). Finally, the magistrate is not to weigh or sift through conflicting evidence presented at the preliminary hearing. *See id.*

¶9      Despite the relatively low evidentiary threshold at a preliminary hearing, a magistrate may deny bindover in certain situations. For example, when the evidence, considered under the totality of the circumstances, "is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim," the magistrate is not required to bind a criminal defendant over for trial. *See In re I.R.C.*, 2010 UT 41, ¶ 22, (alteration in original) (citations and internal quotation marks omitted).

II. The Evidence Presented at the Preliminary Hearing

¶10     To properly bind Defendant over on each count of second degree felony communications fraud, the evidence must support a reasonable belief that (1) Defendant "devised [a] scheme or artifice to defraud" Green Harvest, or that he sought "to obtain from [Green Harvest] money, property, or anything of value"; (2) Defendant did so "by means of false or fraudulent pretenses, representations, promises, or material omissions"; (3) Defendant "communicate[d] directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice"; (4) "the pretenses, representations, promises, or material omissions made or omitted were made or omitted intentionally, knowingly, or with a reckless disregard for the truth"; and (5) the value of the property, money, or thing obtained or sought to be obtained is or exceeds $5,000. *See* Utah Code Ann. § 76-10-1801(1)(d), (7).

¶11     In refusing to bind Defendant over for trial, the magistrate determined that the prosecution failed to present sufficient evidence to establish that a false or fraudulent exchange took place between Defendant and Green Harvest. Specifically, the magistrate determined,

> The State has not presented enough facts to establish the second element of communications fraud. While the State did show that [Defendant] did not personally remove asbestos, the State failed to show that he falsely stated anything by submitting the invoice for asbestos removal. The State failed to show that asbestos was not removed, nor did the State offer any evidence that Graham Ironworks was not the entity that originally paid for that removal. Thus, the State failed to show that the invoices were false or fraudulent in any way and that Green Harvest paid for a service that was not rendered.

¶12 The State argues that it was "only required to present sufficient evidence to raise a reasonable belief that [the three invoices for asbestos removal] were false." In challenging the magistrate's decision on appeal, the State relies upon evidence submitted at the preliminary hearing, which it claims establishes a reasonable belief that Defendant's invoices were false or fraudulent. Specifically, the State presented evidence that neither Defendant nor Graham Ironworks was licensed to do asbestos removal. In addition, the State adduced evidence suggesting that all asbestos removal at the steel mill salvage site was performed by CST or its subcontractors and that no removal was performed by Defendant, Defendant's Son, or Graham Ironworks. The State contends that these two facts, when viewed in the light most favorable to the prosecution, demonstrate that "Defendant played no role at all in the removal of asbestos from the [steel mill salvage] site," contrary to what his invoices show. Accordingly, the State argues that Defendant's invoices for asbestos removal costs were false or fraudulent representations made in support of a scheme to obtain money directly from Green Harvest and indirectly from Investor.[5]

---

5. The State also directs our attention to other evidence presented at the preliminary hearing as further support for bindover. *See generally In re I.R.C.*, 2010 UT 41, ¶ 24, 232 P.3d 1040 (stating that a bindover determination includes consideration of the "totality of the circumstances"). The State argues that "Defendant's bindover on the asbestos charges includes not only the evidence specific to those charges but also evidence that Defendant had a pattern of making false statements to obtain money from . . . [Investor] and Green Harvest." However, the other evidence referred to by the State was used to support different counts of communications fraud, securities fraud, theft, and pattern of unlawful activity. Even though the magistrate bound Defendant over on these different counts, the evidence supporting these counts has no particular relevance to communications fraud counts 12, 16, and 17.

¶13   Defendant argues that the magistrate correctly refused bindover because the "State failed to present any evidence that [Defendant] submitted invoices to Green Harvest by means of false or fraudulent pretenses, representations, promises, or material omissions." Defendant claims that the invoices merely sought reimbursement for his payments made to CST and its subcontractors for asbestos removal. Defendant notes that it was common practice for him to pay for a variety of expenses needed for daily operations at the salvage site and then to request reimbursement from Green Harvest. For example, Defendant sought reimbursement for "business related stuff," including "miscellaneous things like tires and . . . general costs for paying employees, and . . . day-to-day stuff." In her role as office manager and secretary, Office Manager received all invoices, reviewed them, and submitted written checks to Defendant. Office Manager never expressed any concern with Defendant's invoices, and Investor's Son testified that the invoices Green Harvest received for asbestos removal looked like the typical invoice regularly received from Defendant. Furthermore, the invoices themselves explicitly state that the asbestos removal, in addition to other daily expenses, was part of the "Total Reimbursable Expenses" or "Reimbursement."

### III. Whether the Magistrate Acted Within Her Discretion in Not Binding Defendant Over for Trial

¶14   We determine that the magistrate acted within her discretion in denying bindover on the three communications fraud counts. The determinative issue in this case is whether the evidence supports a finding of probable cause for communications fraud based on allegations that Defendant submitted false or fraudulent invoices. In viewing the evidence and all inferences drawn therefrom in the light most favorable to the prosecution, as we must, we determine that the State did not meet its burden at the preliminary hearing stage.

¶15   In her order denying bindover, the magistrate stated that the prosecution failed to present "any evidence that Graham Ironworks

was not the entity that originally paid for [the asbestos] removal." This finding is important because if another party had originally paid for the asbestos removal, clearly Defendant would have no need to seek reimbursement from Green Harvest. The State argues that the magistrate impermissibly required it to disprove this "speculative possibility." *See generally In re I.R.C.*, 2010 UT 41, ¶ 24, 232 P.3d 1040 ("[T]he State need not disprove every possibility that tends to negate probable cause."). However, the facts presented at the preliminary hearing indicate that Defendant's invoices sought reimbursement for asbestos removal performed by CST and its subcontractors. This does not appear to be a "speculative possibility." Also, the prosecution is the party that has the burden to establish probable cause at the preliminary hearing. *See* Utah R. Crim. P. 7(i)(1) ("The state has the burden of proof [at a preliminary hearing] and shall proceed first with its case."). Thus, it is the prosecution's obligation to produce evidence demonstrating a reasonable belief that Defendant's reimbursement explanation was false or fraudulent. The State has not identified any evidence of this nature in the record.

¶16     The State appears to allege that the invoices were false because they failed to specify that the asbestos removal was performed by parties other than Defendant. However, this theory is inconsistent with the invoices themselves, which repeatedly mention "Reimbursement" and "Total Reimbursable Expenses." These terms, on their face, suggest that Defendant may not have been the actual party to remove the asbestos. By definition, reimbursement means "to pay back to someone" or "to make restoration or payment of an equivalent to." *See Merriam-Webster's Collegiate Dictionary* 1049 (11th ed. 2004). Defendant allegedly incurred an expense by paying CST and its subcontractors to perform the asbestos removal. Even when viewing the invoices in the light most favorable to the prosecution, the State's evidence

does not support a reasonable inference that such a request for reimbursement was illegal, illegitimate, or fraudulent.[6]

¶17     Likewise, as Defendant states, the "fact that [he] did not personally remove the asbestos does not provide a basis for the magistrate to reasonably infer that [his] request[ for] reimbursement for the removal was fraudulent. Such a conclusion would be mere speculation." Under Utah law, a magistrate is "free to decline bindover where the facts presented by the prosecution provide no more than a basis for speculation—as opposed to providing a basis for a reasonable belief." *State v. Virgin,* 2006 UT 29, ¶ 21, 137 P.3d 787. "[S]peculation is defined as the act or practice of theorizing about matters over which there is no certain knowledge." *State v. Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096 (citations and internal quotation marks omitted). On these counts, the prosecution's evidence fails to provide certain knowledge, or a reasonable belief, that Defendant engaged in communications fraud. Therefore, the evidence is "incapable of satisfying the probable cause standard. When that is the case, magistrates are empowered to deny bindover." *Virgin*, 2006 UT 29, ¶ 22.

---

6. Subsection 7 of the communications fraud statute provides that "[a] person may not be convicted under this section unless the pretenses, representations, promises, or material omissions made or omitted were made or omitted *intentionally*, *knowingly*, or with a *reckless disregard for the truth*." *See* Utah Code Ann. § 76-10-1801(7) (LexisNexis 2012) (emphasis added). Therefore, in order to establish a reasonable belief that Defendant's invoices for asbestos removal were criminally false or fraudulent, the prosecution must show that the invoices reflected some degree of intentional, knowing, or reckless deceit. *See id.* The prosecution's evidence reveals only that Defendant did not personally remove the asbestos because he did not have a license to do so. Thus, the magistrate's determination that the totality of the evidence did not demonstrate Defendant's fraudulent misrepresentation appears to be correct.

¶18    The State cites to *State v. Ramirez*, 2012 UT 59, 289 P.3d 444, in support of its argument that the magistrate improperly weighed conflicting evidence. *See id.* ¶ 17. In that case, the magistrate refused to bind the defendant over on drug possession charges after considering the evidence presented at the preliminary hearing. *Id.* ¶ 5. The evidence included drug paraphernalia containing drug residue located in a motel room in the exact location the defendant had directed and permitted the officers to search and the defendant's admission to having a drug problem. *Id.* ¶¶ 2–5, 11. The magistrate "opined that there was no evidence that Ramirez had knowledge that the drug residue and paraphernalia were present in the motel room either when he was personally present in the room or when officers searched the room." *Id.* ¶ 11. Therefore, the magistrate was faced with a choice between two competing inferences based on the evidence. In the magistrate's view, "it [was] a stronger inference [that the defendant] didn't know the drugs were there, or he wouldn't have sent the police officers to that place to look around." *Id.* ¶ 5 (internal quotation marks omitted).

¶19    In reversing the magistrate's bindover decision, the Utah Supreme Court explained that the magistrate's "role does not encompass an assessment of whether [an] inference [in the prosecution's favor] is more plausible than an alternative that cuts in favor of the defense." *Id.* ¶ 10. Rather, "[t]hat is a matter of factfinding, which is left for the jury at trial." *Id.* The supreme court then concluded that, though circumstantial, sufficient evidence existed in Ramirez's case to support the bindover. *Id.* ¶ 16.

¶20    Unlike the magistrate in *Ramirez,* the magistrate in this case does not appear to have weighed or assessed the plausibility of the evidence. Nor is there any indication that she rejected the prosecution's reasonable inferences for any alternate theory presented by the defense. *See id.* ¶ 13 ("[T]he choice between two alternative, reasonable inferences is a matter for the factfinder at trial, not for the magistrate at the preliminary hearing."). Rather, the magistrate determined that the prosecution did not present

"enough facts to establish the second element of communications fraud."

¶21    The prosecution's evidence at the preliminary hearing was limited to the fact that Defendant was not licensed to perform asbestos removal, that he did not actually remove the asbestos, and that he submitted invoices to Green Harvest for reimbursement for the asbestos removal. The prosecution failed to provide any evidence suggesting that Defendant was not entitled to the reimbursement, such as proof showing that CST never charged Defendant for the asbestos removal. In contrast, in *Ramirez*, the prosecution presented at least some affirmative evidence at the preliminary hearing connecting the defendant to the possession of drugs and drug paraphernalia. *See id.* ¶ 11. For example, "[the] evidence included the fact that police officers found the glass pipe exactly where Ramirez predicted they would, that when asked to explain the pipe, Ramirez openly admitted that he had a drug problem, and that officers found material belonging to Ramirez (and to no one else) in the room where they found the drugs and paraphernalia." *Id.*

¶22    At a preliminary hearing, "the magistrate is tasked only with assuring that there is evidence that could sustain a reasonable inference in the prosecution's favor on each element of the crime(s) in question." *Id.* ¶ 10. Here, the magistrate was simply unable to infer from the evidence that Defendant's invoices for asbestos removal constituted a false or fraudulent communication with the intent to obtain money from Investor.

¶23    "[A]n appellate court should grant commensurate limited deference to a magistrate's application of the bindover standard to the facts of each case." *State v. Virgin*, 2006 UT 29, ¶ 34, 137 P.3d 787. The "proximity [of magistrates] to the facts of the case weighs in favor of granting them some discretion in bindover decisions." *Id.* ¶ 31. Given the insufficient evidence presented by the prosecution, we determine that the magistrate acted within her discretion by refusing bindover.

CONCLUSION

¶24    Even when viewed in the light most favorable to the prosecution, the evidence does not support a finding of probable cause. Accordingly, we affirm the magistrate's order denying bindover.

———