**2022 UT App 129**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
TONI DANNELLE GLOSENGER,
Appellee.

Opinion
No. 20210136-CA
Filed November 17, 2022

Seventh District Court, Monticello Department
The Honorable Don Torgerson
No. 201700078

Sean D. Reyes, Nathan H. Jack, and Christopher D.
Ballard, Attorneys for Appellant

Emily Adams and Sara Pfrommer, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this
Opinion, in which JUDGE DAVID N. MORTENSEN and
SENIOR JUDGE KATE APPLEBY concurred.[1]

CHRISTIANSEN FORSTER, Judge:

¶1     While driving from North Dakota to Utah, Toni Dannelle
Glosenger steered her truck into oncoming traffic and collided
with an SUV. The collision caused the death of Glosenger's
passenger and the two people in the SUV. The State charged
Glosenger with three counts of manslaughter and a traffic
infraction. Following a preliminary hearing, the magistrate
declined to bind over Glosenger on the charges on the ground that
the State had introduced no evidence other than the fact of the

---

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

collision to prove that Glosenger was criminally reckless. The State appeals the district court's bind over decision, and we reverse.

BACKGROUND[2]

¶2    On a "hot and dry" day in August 2019, Glosenger was driving her pickup truck to Utah, heading southbound on a straight section of a two-lane highway. An SUV towing a boat was driving northbound on the same section of road. Without warning, Glosenger's truck veered into the northbound lane and collided with the SUV. Glosenger sustained serious injuries in the collision; the passenger in Glosenger's truck and the two people in the SUV were killed.[3]

¶3    After the collision, medical and law enforcement personnel arrived on scene and a state trooper (Trooper) began interviewing witnesses. One witness stated that he was following the SUV on the highway "when suddenly . . . a silver pickup truck headed southbound veered into the northbound lane causing a collision with the SUV head-on. The SUV tried steering away, to stop [the collision] from happening, but had no time to make the sudden move." Another witness stated that he was following the SUV when a truck "headed south[] drifted at full speed into the northbound lane and collided into the [SUV]. . . . It happened too quick for the [SUV] to brake or adequately maneuver. The [truck] made no corrective action. . . . The [truck] came . . . over too

---

2. "When we review a magistrate's bindover decision, we view all evidence in the light most favorable to the prosecution, draw all reasonable inferences in favor of the prosecution, and recite the facts with that standard in mind." *State v. Prisbrey*, 2020 UT App 172, n.1, 479 P.3d 1126 (quotation simplified).

3. Evidence in the record suggests that Glosenger was also traveling with "at least one cat" at the time of the collision. It is unclear if the cat was in a crate. The cat was killed in the collision.

quickly." Trooper did not see or talk to anyone traveling southbound (behind Glosenger's truck) who had witnessed the collision, nor did he see any vehicles other than the truck and the SUV "that appeared to be tied up or involved in [the] crash."

¶4      Trooper also examined the crash scene. He observed "[gouges] and markings in the northbound travel lane" closer to "the white line on the shoulder rather than the [yellow] center line . . . in the middle of the road," which indicated that the collision occurred in the northbound lane. Most of the damage to both the truck and the SUV was on "the passenger front," meaning that "it was a front passenger to front passenger collision." There were skid marks on the northbound side of the roadway, caused by the SUV, but there were no skid marks on the southbound side where Glosenger's truck had been.

¶5      A few days after the collision, an agent (Agent) for the State Bureau of Investigation was contacted to perform a follow-up investigation regarding the collision. Agent assisted the Major Collision Investigation Team in preparing a report (the Report), using information from, among other things, an internal module in Glosenger's truck that records driving data. The Report showed that Glosenger was driving 67.2 miles per hour 5 seconds before the collision and 68 miles per hour at the time of the collision (the speed limit was 65 miles per hour). There were no "spikes" or "drop[s]" in speed, "which would be consistent with drowsy driving."

¶6      The Report also showed that five seconds before the collision, Glosenger's steering wheel was angled slightly to the left as she navigated a "slight curve" in the highway. As the road transitioned into a "straightaway," the wheel "started to come back straight between 3.5 seconds to 0.3 seconds prior to the crash." However, in the last 0.3 seconds prior to impact, the wheel abruptly turned to the left "from 5 percent to almost 36.5 percent." The point of collision occurred as the vehicles traversed the straightaway.

¶7     Included in the Report was information Agent obtained from Glosenger's cell phone records and from an interview with Glosenger. According to the cell phone records, which Agent obtained via a warrant, "there was no phone activity at the time of the crash." However, the records would indicate only whether there were incoming calls or text messages, not whether the phone was being manipulated at the time of the collision.

¶8     Agent also interviewed Glosenger at the hospital after the collision. Glosenger indicated that she had been "driving for a long time, from North Dakota back to Monticello," and that she stopped in Colorado to take "one nap." She did not remember "any specific details . . . about the actual crash and what happened."

¶9     The State charged Glosenger with three counts of manslaughter and a traffic infraction. At a preliminary hearing, the State presented the evidence detailed above. Agent explained the summary of findings in the Report, namely that speed, weather, the condition of the roadway, and mechanical issues were not factors in the collision. Moreover, there was "no indication of drowsy driving or a medical issue at the time of the collision." And although Glosenger had "a history of seizures," she "was taking medication to manage them" and the medication "was all within therapeutic ranges." In light of these findings, the Report noted that "[d]istracted driving is a possible reason for the sudden swerve into the oncoming [SUV's] path."

¶10    In addition, Agent testified about a conversation he had with Glosenger approximately three months after the collision. According to Agent, Glosenger called him to discuss details she had since remembered about the collision. During the call, Glosenger stated that

> she was in [the] passing lane just prior to the area of the crash and there was a [semi-truck] in front of her that she was going to pass, and she started to pass

them. And then as the lane ended, she found herself in the opposite lane of travel.

> She . . . felt at the time the best option she had was to go into oncoming traffic and try to cross the road versus just applying the brakes and slowing down and then veered into oncoming traffic, and that's where she struck the other vehicle.

But Agent explained that based on the other evidence in the case, including the other witness statements, the Report, and photographs of the accident scene, he did not believe there was another vehicle in front of Glosenger at the time of the collision. In addition, he opined that the speed data contained in the Report was not reflective of a vehicle that was either accelerating or decelerating to pass someone, but instead it "appear[ed] as if . . . the cruise control [was] set and the vehicle [was] just traveling down the road."

¶11 At the close of evidence, the magistrate told the parties that "[t]his looks like res ipsa loquitur in the criminal world." The magistrate directed the parties to brief two issues: the legal standard for bind over at a preliminary hearing and the difference between negligence and recklessness.

¶12 Following briefing, the magistrate declined to bind over Glosenger on the charges. The magistrate reasoned the State did not "have any evidence to say what the [criminal] act was or the omission that [Glosenger] did . . . to cause [the] accident." The magistrate recognized the collision was caused when Glosenger crossed the midline on the road and that driving across the midline is "not reasonable." However, the magistrate concluded that "[c]rossing the middle line is a result of [an] act," and that although the State had provided multiple "different options for why [Glosenger] might have been reckless"—including that she was distracted or drowsy—all the reasons were merely

"speculative." Because the State could not point to any "fact that [was] nonspeculative," bind over was not appropriate.

ISSUE AND STANDARD OF REVIEW

¶13 The State now appeals the magistrate's decision declining to bind over Glosenger for three counts of manslaughter and a traffic infraction. "A decision to bind over a criminal defendant for trial presents a mixed question of law and fact and requires the application of the appropriate bindover standard to the underlying factual findings." *State v. Prisbrey*, 2020 UT App 172, ¶ 18, 479 P.3d 1126 (quotation simplified). "In the bindover context," appellate courts give "limited deference to a magistrate's application of the bindover standard to the facts of each case." *State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444 (quotation simplified).

ANALYSIS

¶14 To bind over a defendant for trial, the State must establish at a preliminary hearing that probable cause exists for all the elements of the crimes charged. "The evidentiary threshold" to establish probable cause at a preliminary hearing is "relatively low." *State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444. All the State must do to establish probable cause is to "present reasonably believable evidence—as opposed to speculation—sufficient to sustain each element of the crime(s) in question." *State v. Prisbrey*, 2020 UT App 172, ¶ 21, 479 P.3d 1126 (quotation simplified). Indeed, at this stage of a criminal case, the State need not "produce evidence sufficient to support a finding of guilt at trial or even to eliminate alternative inferences that could be drawn from the evidence in favor of the defense." *Id.* (quotation simplified). And when assessing the evidence, the magistrate "must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *Id.* (quotation simplified).

¶15　After the collision, the State charged Glosenger with three counts of manslaughter. A person is guilty of manslaughter when the person "recklessly causes the death of another individual." Utah Code Ann. § 76-5-205(2)(a) (LexisNexis Supp. 2022). Thus, to obtain a bind over on manslaughter, the State had to present evidence sufficient to support a reasonable belief that Glosenger (1) recklessly (2) caused the deaths of the other people. Because the second element is undisputed, we focus our analysis on whether the State presented sufficient evidence that Glosenger acted recklessly when driving the truck.

¶16　A person acts recklessly when he or she "is aware of but consciously disregards a substantial and unjustifiable risk" that the harm will occur. *Id.* § 76-2-103(3) (2017). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* Accordingly, the magistrate was required to bind over Glosenger on the manslaughter charges once the State offered reasonably believable evidence that Glosenger was aware of but consciously disregarded a substantial and unjustifiable risk.

¶17　At the preliminary hearing, the State offered evidence to support multiple theories of recklessness, one of which is that the collision occurred when Glosenger was trying to pass a semi-truck. To credit this theory, the State elicited testimony from Agent, who described the conversation he had with Glosenger approximately three months after the collision. During the call, Glosenger explained that prior to the crash she was in a passing lane attempting to pass a truck. When the passing lane ended, "she found herself in the opposite lane of travel." At that point, Glosenger "felt . . . the best option she had was to go into oncoming traffic and try to cross the road versus just applying the brakes and slowing down." As she "veered into oncoming traffic," she "struck the other vehicle." Despite this testimony, the magistrate concluded the State failed to offer nonspeculative

evidence to support a finding that Glosenger was driving recklessly. This conclusion was error.

¶18    In denying bind over, the magistrate noted the State had not put forth "any evidence to say what the [criminal] act was." The magistrate recognized the collision was caused when Glosenger "cross[ed] the middle line," but concluded that because there was "no explanation for it," a crime had not been committed. But this conclusion ignores the information Glosenger provided to Agent during their phone call after the collision. As noted, Glosenger told Agent that prior to the collision, she was attempting to pass a semi-truck in a passing lane. When the passing lane ended, "she found herself in the opposite lane of travel" and decided "*the best option she had was to go into oncoming traffic* and try to cross the road versus just applying the brakes and slowing down." (Emphasis added.) As a result, Glosenger "veered into oncoming traffic, and that's where she struck the other vehicle."

¶19    Glosenger's account of the collision shows she was aware of but consciously disregarded the risk of harm to herself, her passenger, and the people in the oncoming vehicle. According to her own recollection of the collision, Glosenger was on the wrong side of the road after the passing lane ended and had the opportunity to brake and slow down. But she chose not to do so. Instead, she made the conscious decision to turn the wheel and steer the truck into oncoming traffic.

¶20    To be sure, evidence contrary to Glosenger's account exists in the record. But that is not the point. At this stage of the proceedings, the State is not required "to eliminate alternative inferences that could be drawn from the evidence in favor of the defense." *See State v. Schmidt*, 2015 UT 65, ¶ 18, 356 P.3d 1204 (quotation simplified). The State was not required to prove the specific reason Glosenger decided to turn into oncoming traffic; it needed to prove only that she was aware of and consciously disregarded the risk of harm to herself and others by doing so. *See In re B.W.*, 103 N.E.3d 266, 277–78 (Ohio Ct. App. 2017) ("When

presented with alternate credible theories of the case at the bindover hearing, a [magistrate] is not permitted to choose a theory; this is the function of the jury at trial . . . ."). Accordingly, Glosenger's account of the collision is sufficient to satisfy the "relatively low" bind over standard. *See State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (quotation simplified). Viewed in the light most favorable to the State and including all reasonable inferences that can be drawn therefrom, Glosenger's description of the collision is sufficient to support a conclusion that she was driving recklessly.

¶21  Some evidence was presented that may support a verdict at trial in Glosenger's favor (including that at the time of the collision she "was going the speed limit," "[h]er medication was within therapeutic range," "[s]he wasn't on her cell phone," and there was no indication that there was a "mechanical failure"), but "the liberal bindover standard does not authorize [a magistrate] to second-guess the prosecution's evidence by weighing it against the totality of the evidence in search of the most reasonable inference to be drawn therefrom." *See State v. Jones*, 2016 UT 4, ¶ 22, 365 P.3d 1212 (quotation simplified). "Weighing evidence in search of the most reasonable inference to be drawn therefrom is the role of the factfinder at trial." *Id.* ¶ 24.

CONCLUSION

¶22  After examining the evidence here, and based on Glosenger's own statements, we conclude the State carried its burden to support each element of the charged crimes. Thus, the magistrate erred in refusing to bind over Glosenger for trial. We reverse and remand for further proceedings consistent with this opinion.

———————