**2023 UT App 128**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
THOMAS FOWERS,
Appellee.

Opinion
No. 20220073-CA
Filed October 26, 2023

Fourth District Court, Provo Department
The Honorable Robert A. Lund
No. 201402484

Sean D. Reyes and Jeffrey D. Mann, Attorneys for
Appellant, assisted by law student Rebecca Barker[1]

Douglas J. Thompson, Attorney for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

LUTHY, Judge:

¶1　Thomas Fowers's ex-wife (Ex-Wife) is married to his adopted brother (Brother). A court issued a protective order directing Fowers not to "contact . . . or communicate in any way with [Ex-Wife], either directly or indirectly," and not to "threaten to commit any form of violence against" her. Early one morning, Fowers called Brother's phone three times in two minutes from an unrecognized number. The first two times, no one answered. The third time, Ex-Wife answered, and Fowers said, "You and that f***ing whore have it coming."

---

1. *See* Utah R. Jud. Admin. 14-807 (governing law student practice in the courts of Utah).

¶2     Fowers was charged with violating the protective order. The district court declined to bind Fowers over and dismissed the charge, determining that there was "no evidence in the record to establish that Mr. Fowers . . . intentionally communicat[ed] either directly or indirectly to [Ex-Wife]" since "the statement itself clearly [was] directed at [Brother]" and Fowers did not tell Brother "to direct the comment to [Ex-Wife]." The State appeals, and we reverse.

BACKGROUND

¶3     Ex-Wife obtained a protective order against Fowers in August 2017. The order included a "No Contact Order" stating, "Do not contact, phone, mail, e-mail, or communicate in any way with [Ex-Wife], either directly or indirectly." It also included a "Personal Conduct Order" stating, "Do not commit, try to commit or threaten to commit any form of violence against [Ex-Wife] . . . . This includes stalking, harassing, threatening, physically hurting, or causing any other form of abuse."

¶4     One morning in July 2020, Brother's phone received three calls between 4:57 a.m. and 4:58 a.m. from an unrecognized number. At the time of the first call, Ex-Wife and Brother "were, of course, sleeping." As they awoke, they thought that maybe someone was calling for help related to a wedding they were to attend that day. When Ex-Wife answered the third call, she recognized Fowers's voice saying, "You and that f***ing whore have it coming."

¶5     Ex-Wife reported the calls to authorities, and Fowers was charged with one third-degree felony count of violation of a protective order with a domestic violence enhancement.

¶6     The district court held a preliminary hearing on the charge. The State presented evidence that Fowers had been served with the protective order. In addition to Ex-Wife, who testified about

the phone calls, the deputy who received Ex-Wife's report testified that he had checked the number from which the calls had been made against local records and found that the number was attached to Fowers. The deputy also said that he called the number and that, when he asked to speak to Fowers, the person who answered identified himself as Fowers. Additionally, the court accepted into evidence records of three prior convictions of Fowers's for violating this protective order and a previous protective order because those convictions were "relevant to establish under evidence [r]ule 404 both knowledge by the defendant and intention."

¶7     After the State presented its case, the court found "that the [S]tate ha[d] not met its burden." The court explained:

> [A]lthough the direct and circumstantial evidence establishes that Mr. Fowers made the call, the number that he called was his adoptive brother's number, not the alleged victim's number. . . .
>
> [And] the statement itself clearly is directed at [Brother], not at [Ex-Wife]. He say[s] "you and that f'ing whore," meaning that he's directing his comment toward [Brother] and not [Ex-Wife] . . . . [W]hat is glaringly missing from the record here is any statement by Mr. Fowers to [Brother] to direct the comment to the alleged victim. Therefore, there is no evidence in the record to establish that Mr. Fowers intentionally violated this order by intentionally communicating either directly or indirectly to [Ex-Wife].
>
> Based on those findings, I find that the [S]tate has not—even drawing inferences in the light most favorable to the [S]tate— . . . establish[ed] sufficient evidence[,] and I decline to bind the charge over.

The court dismissed the charge with prejudice, and the State now appeals.

ISSUE AND STANDARD OF REVIEW

¶8     The State contends that it presented evidence establishing probable cause that Fowers violated the protective order and that the district court therefore erred by not binding Fowers over. In essence, the State argues that the court applied the wrong legal standard by not viewing the evidence and all reasonable inferences that can be drawn from it in favor of the prosecution. A district court's "decision to bind over a criminal defendant for trial presents a mixed question of law and fact and requires the application of the appropriate bindover standard to the underlying factual findings. As a result, in reviewing a bindover decision, an appellate court should afford the decision limited deference." *In re I.R.C.*, 2010 UT 41, ¶ 12, 232 P.3d 1040 (cleaned up). "Applying the wrong legal standard . . . will always exceed whatever limited discretion the [court] has in the bindover decision." *State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444.

ANALYSIS

¶9     Our supreme court has explained that the evidentiary threshold for bindover is a low bar:

> Although the guarantee of a preliminary hearing is fundamental, the evidentiary threshold at such hearing is relatively low. As we have emphasized, a showing of "probable cause" entails only the presentation of evidence sufficient to support a reasonable belief that the defendant committed the charged crime. . . . To justify binding a defendant over for trial, the prosecution need not present evidence capable of supporting a finding of guilt

> beyond a reasonable doubt. Nor is the prosecution required to eliminate alternative inferences that could be drawn from the evidence in favor of the defense. All that is required is reasonably believable evidence—as opposed to speculation—sufficient to sustain each element of the crime(s) in question.

*State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444 (cleaned up). Here, the State needed to present "evidence sufficient to support a reasonable belief" that Fowers violated the protective order, *id.* (cleaned up), and the court was required to "view all evidence in the light most favorable to the prosecution and . . . draw all reasonable inferences in favor of the prosecution," *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (cleaned up).

¶10    A person commits the crime of violation of a protective order if the person "(a) is the respondent or defendant subject to a protective order . . . and (b) intentionally or knowingly violates that order after having been properly served" with it. Utah Code § 76-5-108(2). A person acts intentionally "when it is his conscious objective or desire to engage in the conduct." *Id.* § 76-2-103(1). And a person acts knowingly "when he is aware of the nature of his conduct or the existing circumstances." *Id.* § 76-2-103(2).

¶11    There is no dispute that Fowers was subject to the protective order at issue, and the State showed that Fowers was served with that protective order. Thus, the only issue before us is whether the State offered evidence supporting a reasonable belief that Fowers intentionally or knowingly violated the protective order. On this point, the State first argues that it put on evidence sufficient to establish probable cause that Fowers violated the No Contact Order portion of the protective order by "intentionally or knowingly contact[ing] Ex-Wife at least indirectly" because "[i]t was reasonable to infer that Fowers knew or intended that his contact and [message] . . . would be relayed to Ex-Wife." The State then argues that Fowers's statement "You and that f***ing whore have it coming" can also be reasonably

interpreted as a threat of violence in violation of the Personal Conduct Order portion of the protective order. We agree with each of the State's arguments.[2]

¶12 The State put on evidence establishing probable cause that Fowers intentionally or knowingly contacted Ex-Wife at least

---

2. Fowers asserts that the State did not preserve "the arguments" it now makes on appeal because the prosecutor "did not raise [them] in a way that gave the district court the opportunity . . . to address [them]." "An issue is preserved by presenting it to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Vierig v. Therriault*, 2023 UT App 67, ¶ 43, 532 P.3d 568 (cleaned up); *see id.* ¶ 44 ("Of note, *issues* must be preserved, not arguments for or against a particular ruling on an issue raised below. By contrast, new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation." (cleaned up)).

Fowers is mistaken when he says that the State did not meet this preservation standard here. At the close of the preliminary hearing, the State referenced "paragraph 1 and 2 of the protective order"; identified those paragraphs as the Personal Conduct Order and No Contact Order respectively; and noted that they prohibited Fowers from "threatening [Ex-Wife] in any way" and from "communicating in any way with [Ex-Wife] either directly or indirectly." The State then highlighted the evidence that Fowers "called the husband of [Ex-Wife] in the early morning hours when they would presumably be together and made a statement against her to [her] then husband," which is the same evidence that the State emphasizes here. By presenting evidence and arguing below for bindover based on an alleged violation of both the Personal Conduct Order and the No Contact Order, the State gave the district court an opportunity to rule on the same questions we are now asked to rule on. So regardless of whether those questions are characterized as *arguments* or *issues*—and we express no opinion as to the proper characterization here—Fowers's preservation argument fails.

---

indirectly. In *State v. Fouse*, 2014 UT App 29, 319 P.3d 778, *cert. denied*, 329 P.3d 36 (Utah 2014), this court affirmed a conviction for violation of a protective order where the defendant mailed envelopes to the victim's sisters rather than to the victim, his estranged wife. *Id.* ¶¶ 4–7, 43. The victim was living with one of the sisters, and the other sister lived in the apartment next door. *Id.* ¶ 3. While some of the letters in the envelopes were addressed to the victim, others contained statements such as, "Please hold onto this. . . . [E]ven though I can't send nor talk to my wife or kids[,] . . . writing sure does help." *Id.* ¶ 4. Nonetheless, we reasoned that a factfinder "could readily infer that communication directed to or dealing with one's ex-spouse, and sent to the ex-spouse's siblings, will routinely and predictably be conveyed by the siblings to their family member." *Id.* ¶ 40. And we noted, "Such an inference is particularly sound in this case, given the jury's awareness that [the victim] and her sisters were close—in both senses of that term." *Id.*

¶13 The same reasoning applies here. A factfinder could readily infer that calls Fowers placed to Brother or statements Fowers made to him would "routinely and predictably be conveyed" to Ex-Wife, Brother's spouse, especially where a factfinder could reasonably infer that Brother and Ex-Wife were "close" "in both senses of that term." *Id.* Indeed, a factfinder could infer that Fowers's decision to call Brother just before 5:00 a.m.— a time when spouses could reasonably be assumed to be together—manifested his intent to catch Brother and Ex-Wife together. Therefore, we have no trouble concluding that the State's evidence was sufficient to support a reasonable belief that Fowers, by calling Brother's phone when he did, intentionally or knowingly contacted Ex-Wife directly or indirectly. Fowers did not need to explicitly direct Brother to communicate his message to Ex-Wife, and the court erred in suggesting as much.

¶14 The State also asserts that Fowers's statement "You and that f***ing whore have it coming" can be reasonably interpreted as a threat of violence. We agree. In *State v. Spainhower*, 1999 UT

App 280, 988 P.2d 452, this court recognized that the admittedly "vague and indirect" statement, "'I'm going to get you,' surely may connote a threat of bodily injury" because "among the many dictionary definitions of the verb 'get' are: 'to bring to retribution, take vengeance on, KILL' and 'to strike with force, HIT.'" *Id.* ¶¶ 6–7 (cleaned up). Likewise, the words at issue here, though perhaps similarly vague and indirect, could carry either a violent or a nonviolent meaning and must be interpreted by the factfinder in light of "the inferences to be drawn from the context in which the words were spoken." *Id.* ¶ 7. And again, at the preliminary hearing stage, a court must "view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *Clark*, 2001 UT 9, ¶ 10 (cleaned up). Accordingly, at this stage, the court should have interpreted Fowers's words to be capable of conveying, in context, a threat of violence.

## CONCLUSION

¶15 The protective order's No Contact Order forbade Fowers from contacting, phoning, mailing, e-mailing, or communicating in any way with Ex-Wife, either directly or indirectly. Its Personal Conduct Order forbade him from threatening violence against Ex-Wife. Plainly there is "reasonably believable evidence—as opposed to speculation—sufficient to" show that Fowers violated one or both of these provisions. *State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444. By not viewing the evidence and the reasonable inferences to be drawn from it in the light most favorable to the State—and instead requiring a statement by Fowers to Brother to direct the comment at issue to Ex-Wife—the district court applied the wrong legal standard and exceeded "whatever limited discretion" it had in the bindover decision. *Id.* ¶ 7. We therefore reverse and remand this matter to the district court for further proceedings consistent with this opinion.