*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2024 UT 33**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner*,

*v.*

BREVAN BRINGHURST BAUGH,
*Respondent*.

No. 20220272
Heard December 13, 2023
Filed August 15, 2024

On Certiorari to the Utah Court of Appeals

First District, Cache County
The Honorable Angela Fonnesbeck
No. 181100862

Attorneys:

Sean D. Reyes, Att'y Gen., William M. Hains, Asst. Solic. Gen.,
Salt Lake City, for petitioner

Emily Adams, Freya Johnson, Melissa Jo Townsend, Bountiful,
for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN,
JUDGE BEAN, and JUDGE HOWELL joined.

Having recused themselves, JUSTICE HAGEN and JUSTICE POHLMAN
do not participate herein; DISTRICT COURT JUDGE JOSEPH BEAN and
DISTRICT COURT JUDGE ANTHONY HOWELL sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1    In 2018, Brevan Bringhurst Baugh was charged with two
counts of aggravated sexual abuse of a child. At trial, the

prosecution introduced evidence of three instances of alleged abuse,[1] with the instances distinguished based on the location in which they occurred. But the two counts charged were distinguished based on date rather than location. And in the State's closing argument, it told the jurors they could use "any two" of the three alleged instances of abuse to fulfill the elements of the charged counts. The jury convicted Baugh on one count and acquitted him on the other.

¶2    Baugh appealed. He argued there was a risk that the jury did not unanimously agree on which instance of abuse supported the count on which he was convicted. Baugh also contended that his counsel rendered constitutionally ineffective assistance by failing to request jury instructions that would have properly instructed the jury on its constitutional duty to be unanimous as to each element of each convicted count. The court of appeals agreed with Baugh and vacated his sentence.

¶3    We granted the State's certiorari petition. We affirm.

## BACKGROUND

¶4    Between 2012 and 2014, Brevan Bringhurst Baugh lived at his family home (Nibley Home) with his daughter Sasha[2] and her mother. In April 2014, Baugh and Sasha's mother commenced divorce proceedings, and Baugh moved into a one-bedroom apartment (Falls Apartment). Sasha and her siblings visited Baugh while he was living at Falls Apartment. Several years later, Sasha revealed to her therapist that Baugh had abused her, and her therapist reported the allegations to the police.

¶5    During the investigation into the abuse, a detective asked Sasha to call Baugh while the detective listened in. The detective's intent was to get Baugh to confess to the crimes. While on the call, Baugh resisted admitting to the allegations and suggested that Sasha was not remembering things correctly. He eventually apologized to Sasha but remained adamant that the apology was

---

[1] We use "alleged abuse" here because, although Baugh was convicted of one count of aggravated sexual abuse of a child and acquitted of one count, we cannot know on which instance of touching the jury based its conviction. Therefore, when referring to the separate instances of touching, we use the term "alleged."

[2] A pseudonym.

only for inadvertently exposing Sasha to pornography and for her walking in on him while he was masturbating. When pressed, Baugh acknowledged that if Sasha remembered abuse occurring, he wouldn't deny it. But he insisted that he had no recollection of abusing Sasha, blaming his failure to remember on his marijuana use at the time of the alleged acts.

¶6 After this confrontation call, the detective brought Baugh in for questioning. Baugh restated that he and Sasha didn't "have the same recollection of the events." But he did admit to exposing Sasha to pornography and that she had once seen him masturbating. The detective also asked whether Baugh had been abusing Sasha "for years." Baugh responded, "For years[?] Okay no. No." The detective then asked when was the last time he had abused Sasha. Baugh responded that it was at Nibley Home.

¶7 On July 9, 2018, Baugh was charged with two counts of aggravated sexual abuse of a child, a first-degree felony, in violation of Utah Code subsection 76-5-404.1(4). The first count was based on alleged conduct that occurred on or about 2012. The second count was based on alleged conduct that occurred on or about 2014.

¶8 At trial, Sasha testified that Baugh made her touch his penis three times between 2012 and 2014. Sasha stated that during each of these alleged incidents, Baugh put Sasha's hand on his penis and moved it up and down until "white stuff came out." Sasha testified that the first two alleged incidents occurred while Baugh and Sasha were lying on Baugh's bed in Nibley Home. The final alleged incident occurred when Sasha was twelve and Baugh had moved out of Nibley Home and into Falls Apartment.

¶9 Baugh countered Sasha's testimony by testifying that none of the alleged acts occurred. He insisted that, until Sasha's confrontation call, he had no suspicion of the accusations. While Baugh did admit to accidentally exposing Sasha to pornography and further admitted that she had walked in on him while he was masturbating, he remained adamant that he never touched Sasha and he never had Sasha touch him. He also insisted that the comments he made during the phone call and subsequent interrogations were not confessions to having abused Sasha. Baugh testified that his answer to the final question the detective asked him during the interrogation was describing the last time he exposed Sasha to pornography. And when questioned about the other statements he made on the confrontation call, he stated that

he did not outright deny the allegations because he wanted to validate Sasha's feelings.

¶10 During closing argument, the prosecution stated that the two counts charged could be "fulfilled with . . . any two of those incidents that [Sasha] described, those can be the elements of both of these counts." Defense counsel did not object to this statement nor request more specific unanimity instructions.

¶11 The jury was then instructed. Regarding both counts of sexual abuse of a child, the jury was told that it must find:

> (1) the Defendant, Brevan Baugh, (2) occupied a position of special trust in relation to Sasha, and (3) intentionally, knowingly, [or] recklessly touched the anus, buttocks, genitalia or breast of Sasha or otherwise took indecent liberties with her or caused her to take indecent liberties with him, (4) with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant, and (5) at the time of the offenses Sasha was under the age of fourteen.

The jury was also given a general unanimity instruction: "Because this is a criminal case, every single juror must agree with the verdict before the Defendant can be found guilty or not."

¶12 Ultimately, the jury acquitted Baugh of Count One and convicted him of Count Two. Baugh appealed the conviction. He argued that his counsel provided ineffective assistance in failing to request more specific unanimity instructions.

¶13 Article I, section 10 of the Utah Constitution contains the Unanimous Verdict Clause, which reads, "In criminal cases the verdict shall be unanimous." To render a valid verdict under that clause, the jury must be unanimous on all elements of the charged crime.[3] Jury instructions must adequately convey this unanimity requirement to the jury.[4]

---

[3] *State v. Hummel*, 2017 UT 19, ¶ 29, 393 P.3d 314.

[4] *See Meeks v. Peng*, 2024 UT 5, ¶¶ 35, 39, 545 P.3d 226 (explaining that jury instructions must "fairly instruct the jury on the law applicable to the case," and must "accurately convey the law" (cleaned up)).

¶14   In reviewing Baugh's appeal, the court of appeals applied these principles and reasoned that, much like in its recent decision in *State v. Alires*,[5] Baugh's counsel's performed deficiently by failing to request jury instructions that instructed the jury to be unanimous on which specific act supported which specific charge.[6] It further reasoned that these ambiguous instructions could have led some jurors to convict Baugh based on one alleged instance of abuse and others to convict on another alleged instance, in violation of the unanimity requirement.[7] Because of that risk, the court of appeals held that Baugh was prejudiced by defense counsel's deficient performance and vacated his conviction.[8] We granted the State's petition for certiorari.

## STANDARD OF REVIEW

¶15   The State challenges the court of appeals' determination that Baugh's counsel provided constitutionally ineffective assistance by failing to request more specific unanimity instructions. "[W]e review the court of appeals' decision for correctness."[9]

## ANALYSIS

¶16 An ineffective assistance of counsel claim has two elements. "First, the defendant must show that counsel's performance was deficient."[10] "Second, the defendant must show that the deficient performance prejudiced the defense."[11] "[F]ailure to establish either prong is fatal to an ineffective assistance of counsel claim."[12]

¶17   The State argues that neither prong of this test is satisfied. First, the State contends that Baugh's counsel's performance was reasonable because Unanimous Verdict Clause caselaw regarding

---

[5] 2019 UT App 206, 455 P.3d 636.

[6] *State v. Baugh*, 2022 UT App 3, ¶¶ 15–19, 504 P.3d 171.

[7] *Id.* ¶ 21.

[8] *Id.* ¶¶ 26–27.

[9] *State v. McNeil*, 2016 UT 3, ¶ 14, 365 P.3d 699.

[10] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[11] *Id.*

[12] *State v. Centeno*, 2023 UT 22, ¶ 64, 537 P.3d 232 (cleaned up).

how a jury must be instructed on unanimity is ambiguous. Second, the State argues that the court of appeals erred in its prejudice analysis by failing to analyze whether there was a reasonable probability that a jury would have convicted Baugh absent counsel's deficient performance. The appellate court's error, the State contends, is significant because Baugh did not carry his burden of showing that any alleged deficient performance prejudiced him.

¶18   We disagree with the State on both points.

## I. BAUGH'S COUNSEL PERFORMED DEFICIENTLY BY FAILING TO REQUEST A MORE DETAILED UNANIMITY INSTRUCTION

¶19 To constitute deficient performance, counsel's representation must fall "below an objective standard of reasonableness."[13] Reasonableness is determined by "prevailing professional norms."[14] Whether "counsel's actions can be considered strategic plays an important role in our analysis" of whether counsel's performance was deficient, but lack of strategic advantage is not conclusive in determining whether counsel's performance was unreasonable.[15] "A reviewing court must always base its deficiency determination on the ultimate question of whether counsel's act or omission fell below an objective standard of reasonableness."[16]

¶20 The State challenges the court of appeals' deficient performance analysis, claiming that the court of appeals misapprehended Unanimous Verdict Clause caselaw. In its analysis, the court of appeals relied on *Alires* to determine that Baugh's counsel's performance was deficient.[17] The court reasoned that, in *Alires*, it had correctly understood Unanimous Verdict Clause caselaw. In that case, the court dictated that "[w]here neither the charges nor the elements instructions link each count to a particular act, instructing the jury that it must agree as to which criminal acts occurred is critical to ensuring unanimity on each

---

[13] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[14] *Id.*

[15] *State v. Ray*, 2020 UT 12, ¶¶ 34, 36, 469 P.3d 871 (cleaned up).

[16] *Id.* ¶ 36.

[17] *State v. Baugh*, 2022 UT App 3, ¶¶ 15–19, 504 P.3d 171 (citing *State v. Alires*, 2019 UT App 206, 455 P.3d 636).

element of each crime."[18] And because neither the charges, the jury instructions, nor the State's presentation of evidence in Baugh's case linked specific conduct to each count, the court of appeals held that Baugh's counsel's failure to request more specific unanimity instructions constituted deficient performance.[19]

¶21  But the State argues that the caselaw regarding the kind of jury instructions necessary to ensure unanimity was not clear when *Alires* was decided. The court of appeals had, according to the State, incorrectly treated *State v. Saunders*[20]—a plurality opinion—as established precedent and had extended its narrow holding past what this court intended. Without *Saunders* as established precedent, the State argues that the court of appeals' reasoning falls apart because any remaining binding precedent was either not dispositive or inapplicable.

¶22  We now begin our analysis with our own review of the relevant caselaw on the Unanimous Verdict Clause in article I, section 10 of the Utah Constitution.

¶23  The Unanimous Verdict Clause requires that "the [jury's] verdict shall be unanimous" in all criminal cases.[21] It is not enough that the jury find the defendant "guilty of some crime."[22] For example, a verdict would not be unanimous "if some jurors found a defendant guilty of a robbery committed on December 25, 1990, in Salt Lake City, but other jurors found him guilty of a robbery committed January 15, 1991, in Denver, Colorado, even though all jurors" agreed that he was guilty of robbery.[23] The jury must be unanimous "as to a specific crime and as to each element of the crime" to comply with the Unanimous Verdict Clause.[24] Neither party disputes this premise.

¶24 Although our caselaw is clear that the jury must be unanimous as to each element of each count of a crime, it is less

---

[18] *Id.* ¶¶ 14 n.3, 18 (quoting *Alires*, 2019 UT App 206, ¶ 23).

[19] *Id.* ¶¶ 16–19.

[20] 1999 UT 59, 992 P.2d 951.

[21] UTAH CONST. art. I, § 10.

[22] *Hummel*, 2017 UT 19, ¶ 27, 393 P.3d 314 (cleaned up).

[23] *Id.* ¶ 28 (cleaned up).

[24] *Saunders*, 1999 UT 59, ¶ 60 (plurality opinion).

clear how that unanimity requirement must be conveyed to the jury in multiple-act cases like Baugh's, where a defendant is charged with multiple counts of a crime with identical elements.[25]

¶25  In *Saunders*, the defendant was charged with one count of sexual abuse of a child.[26] The prosecution presented evidence of several acts, any one of which could satisfy the touching element of the charge.[27] The unanimity instruction given to the jury stated that there was "no requirement that the jurors be unanimous about precisely which act occurred or when or where the act or acts occurred."[28] On appeal, we held that it was plain error for the trial court to give these instructions, as they could have led the jurors to believe that it was acceptable to render a non-unanimous verdict.[29] But *Saunders* did not establish clear precedent on multiple-act cases because the relevant portion of the opinion was a plurality.[30]

¶26  Our next case on the issue, *State v. Evans*, provided no more clarity regarding the form jury instructions should take to ensure a unanimous verdict.[31] In that case, the defendant challenged jury instructions that presented two alternative theories for finding aggravating factors, without mentioning unanimity.[32]

---

[25] We note that we establish in *State v. Chadwick*—which is published simultaneously with this case—how unanimity must be conveyed to the jury in multiple-act cases in which charges are not connected to specific conduct in the jury instructions. 2024 UT 34, __ P.3d __.

[26] *Saunders*, 1999 UT 59, ¶ 4. Saunders was charged with multiple offenses, but the solitary sexual abuse charge is the only one relevant to our analysis.

[27] *Id.* ¶ 5.

[28] *Id.* ¶ 65.

[29] *Id.* ¶¶ 65, 68 (plurality opinion); *id.* ¶ 70 (Howe, C.J., concurring in part and dissenting in part); *id.* ¶ 79 (Zimmerman, J., concurring in part and dissenting in part).

[30] *See id.* ¶¶ 67, 68 (Russon, J., concurring in the result); *id.* ¶ 70 (Howe, C.J., concurring in part and dissenting in part); *id.* ¶ 79 (Zimmerman, J., concurring in part and dissenting in part).

[31] 2001 UT 22, 20 P.3d 888.

[32] *Id.* ¶¶ 15–16.

In holding that it was not plain error for the court to give these jury instructions, we stated that the instructions created the risk of only slight confusion as to the unanimity required by the jury.[33] The State argues that *Evans* establishes that the lack of a specific unanimity instruction only ever creates a risk of "slight confusion" for a jury. But that reads too much into this court's opinion.

¶27 The *Evans* court stated that it was "unconvinced that the slight confusion that may have arisen from the wording of the instructions used [at trial] present[ed] a reasonable likelihood of a more favorable result for defendant."[34] Such language indicates a case- and fact-specific holding, rather than a general pronouncement, and we decline to extend this holding beyond that case.

¶28 In *State v. Alires*, which had not been decided at the time of Baugh's trial, the court of appeals surveyed the state of the law regarding jury unanimity instructions in multiple-act cases.[35] In *Alires*, the defendant was charged with six counts of aggravated sexual abuse of a child.[36] But, as in *Evans*, the jury instructions did not connect each count to a separate instance of touching.[37] The jury was given a general unanimity instruction informing it that all jurors must be unanimous regarding the guilt of the defendant.[38] During deliberations, the jury asked twice for clarification "on how the counts work," and asked in particular how to "weigh each count when they are all the same."[39] The court referred the jury back to its instructions.[40] The jury convicted Alires on two counts and acquitted him on the rest.[41]

---

[33] *Id.* ¶ 17.

[34] *Id.*

[35] 2019 UT App 206.

[36] *Id.* ¶ 1.

[37] *Id.* ¶ 11.

[38] *Id.* ¶ 23 n.5.

[39] *Id.* ¶ 12.

[40] *Id.*

[41] *Id.*

¶29 The court of appeals reviewed the jury's verdict to determine whether counsel was ineffective for failing to request more specific unanimity instructions.[42] It reasoned that the state of the law "should have been readily apparent" based on our holding in *Saunders*: "[w]here neither the charges nor the elements instructions link each count to a particular act, instructing the jury that it must agree as to which criminal acts occurred is critical to ensuring unanimity on each element of each crime."[43] This blanket statement fails to recognize the reduced weight that *Saunders* must be given as a plurality opinion. Because the relevant portion of *Saunders* did not represent the opinion of the majority of the court, the court of appeals could rely only on that case's outcome as binding precedent, not its reasoning.[44]

¶30 Although the court of appeals may have overstated the weight of the holding in *Saunders*, that case was still the most relevant precedent at the time and thus an indicator to reasonable counsel of the range of appropriate actions. Relevant case law is one of several factors to consider in assessing the reasonableness of counsel's performance. And that counsel's performance was objectively unreasonable because not requesting specific unanimity instructions effectively lowered the State's burden of proof was another factor. Taken together, these two factors still support the court of appeals' conclusion that Alires's counsel performed deficiently despite the court's overstatement of *Saunders* as binding precedent.

¶31 Having reviewed the state of the law regarding the standard for instructing a jury on unanimity, we turn to Baugh's case. Despite the unsettled law in this area, it is clear in Baugh's case that the jury was not adequately instructed.

¶32 Baugh was charged with sexual abuse of a child. Under Utah Code subsection 76-5-404.1(2)(a), a person is guilty of sexual abuse of a child if "the actor: . . . [1] touches, whether over or under

---

[42] *Id.* ¶ 16.

[43] *Id.* ¶¶ 23–24 (citing *Saunders*, 1999 UT 59, ¶ 65 (plurality opinion)).

[44] *See State v. Mohi*, 901 P.2d 991, 996 (Utah 1995) (explaining that plurality opinions "do not constitute binding precedent); *see also State v. Giron*, 943 P.2d 1114, 1121 (Utah 1997) (stating that a plurality opinion's analysis "is not binding").

the clothing, the buttocks or pubic area of a child; . . . the breast of a female child; or . . . otherwise takes indecent liberties with a child," and "[2] the actor's conduct is with intent to . . . cause substantial emotional or bodily pain to any individual; or . . . arouse or gratify the sexual desire of any individual." Caselaw is clear that the jury must be unanimous as to each element of each count of that crime.[45] In practice, this means that the jury must agree on which incident of touching satisfies each count. If the jury does not agree on which act relates to each count, then its verdict violates the Unanimous Verdict Clause.

¶33  The jury in Baugh's case was given a general unanimity instruction that read, "Because this is a criminal case, every single juror must agree with the verdict before the defendant can be found guilty or not guilty." Trial counsel did not request a more specific unanimity instruction.

¶34 The circumstances of Baugh's case created an unacceptable risk of a non-unanimous verdict, and a reasonable attorney would have recognized that risk. Baugh was charged with two counts of aggravated sexual abuse of a child for alleged acts occurring in 2012 and 2014. During his trial, the State presented evidence to the jury of three instances of touching. But the jury was not told *when* these alleged instances occurred, only *where* the alleged instances occurred. The State presented evidence of two instances of touching that occurred at Nibley Home and one that occurred at Falls Apartment.

¶35 The State's presentation of evidence created tension between the evidence and the counts, which were distinguished only by date: one count for 2012 and one count for 2014. Because Baugh lived in both Nibley Home and Falls Apartment in 2014, that tension left room for ambiguity. And that ambiguity left room for non-unanimity. The jurors could agree that touching occurred in 2014 but disagree as to whether the specific instance of touching occurred at Nibley Home or Falls Apartment. And did the jury's verdict did not eliminate the problem. The jury acquitted Baugh on the 2012 count but convicted him on the 2014 count, leaving open the possibility that the jurors may have disagreed on which specific instance of touching the State had proven.

---

[45] *See supra* ¶ 24.

11

¶36 The State also declined to connect specific instances of touching with a count.[46] We have noted that "courts in Utah and elsewhere have determined that a unanimity problem can be remedied by prosecutorial election."[47] That is, the harm that can flow from a lack of a specific unanimity instruction might, in some cases, be mitigated if the prosecutor elects, in closing argument, to spell out for the jury which alleged actions correspond to which charged counts. The absence of prosecutorial election here further indicates that reasonable counsel would have been concerned about unanimity because there was nothing to mitigate the harm of erroneous jury instructions.

¶37 The presence of a legal error "does not necessarily mean that defense counsel's failure to object to the error amounted to deficient performance."[48] And there is a "wide range of reasonable professional assistance."[49] But taking each of the above opportunities for jury confusion together, no reasonable attorney would have failed to request more specific unanimity instructions.

¶38 Baugh's counsel was presented with three instances of touching that were not specifically attached to the two counts charged. And in the State's closing argument, it told the jury that it could fulfill the counts with any two of the alleged instances of conduct. This statement suggested to the jury that it could

---

[46] In criminal cases in which the State has not specified which acts it relied on to support each charged count, it may elect to do so during trial. *See Alires*, 2019 UT App 206, ¶¶ 22–23. We call this decision prosecutorial election. *See State v. Paule*, 2024 UT 2, ¶¶ 77–78, __ P.3d __. For example, in this case, the two counts of sexual abuse were not connected to specific acts when charged. They were distinguished only by approximate date. The State, in its closing argument, could have elected to attach one of the three alleged acts to a specific count instead of telling the jury that it could choose from any of the three alleged acts to satisfy the elements of either count. That election might have mitigated the harm flowing from Baugh's counsel's failure to ask for a specific unanimity instruction. But the State declined to make an election, and Baugh, as we describe below, was harmed by his counsel's failure to act.

[47] *Paule*, 2024 UT 2, ¶ 78.

[48] *State v. Bonds*, 2023 UT 1, ¶ 43, 524 P.3d 581.

[49] *Strickland*, 466 U.S. at 689.

impermissibly mix-and-match the instances of touching when reaching its verdict. The high risk for non-unanimity was clear.

¶39 Further, there were no circumstances in this case that mitigated the risk of a non-unanimous verdict. The evidence for each of the instances of touching was fairly equal in persuasive force.[50] So the evidence was not overwhelmingly stronger for any one instance such that any reasonable jury could have only convicted on that count.

¶40 And there was no strategic advantage to not requesting more specific unanimity instructions. Doing so would not have directed the jury to any especially damaging evidence, and failing to do so effectively lowered the State's burden of proof for the touching element.[51]

¶41 Because the risk of a non-unanimous verdict would have been clear to reasonable counsel, Baugh's counsel's failure to request more specific unanimity instructions was objectively unreasonable. Therefore, his counsel's performance was deficient.

## II. BAUGH'S COUNSEL'S DEFICIENT PERFORMANCE PREJUDICED BAUGH

¶42 To prevail on an ineffective assistance of counsel claim, the defendant must show that "counsel's errors actually had an adverse effect on the defense,"[52] and that there is a "reasonable probability that, but for [those] . . . errors, the result of the proceeding would have been different."[53] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[54] It is insufficient "for the defendant to show that the

---

[50] *See Baugh*, 2022 UT App 3, ¶ 22.

[51] *See Alires*, 2019 UT App 206, ¶ 25 (explaining that failing to request more specific unanimity instructions in the face of a risk of a non-unanimous verdict "effectively lower[s] the State's burden of proof").

[52] *State v. Beverly*, 2018 UT 60, ¶ 30, 435 P.3d 160 (cleaned up).

[53] *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also State v. Grunwald*, 2020 UT 40, ¶ 22, 478 P.3d 1 (explaining *Strickland*'s prejudice standard).

[54] *Strickland*, 466 U.S. at 694; *see also Grunwald*, 2020 UT 40, ¶ 22 (quoting *Strickland*, 466 U.S. at 694).

errors had some conceivable effect on the outcome of the proceeding."[55] And "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[56]

¶43   The State argues that the court of appeals failed to consider whether the jury would have convicted absent defense counsel's error. In the State's view, the court of appeals completed only a portion of the *Strickland* prejudice analysis: whether the jury convicted Baugh because of counsel's deficient performance.

¶44   While we acknowledge the court of appeals may not have signposted its inquiry as clearly as possible, we are satisfied that the court conducted the requisite analysis. And we agree that counsel's deficient performance prejudiced Baugh.

¶45   The court of appeals began its analysis by correctly summarizing *Strickland*'s prejudice standard.[57] The court then considered the totality of the evidence before the jury. Sasha testified about three instances of abuse—two occurring at Nibley Home and one at Falls Apartment—but distinguished these instances only by the location.[58] And "[t]he jury instructions distinguished the counts, not by location but based on the date of the alleged abuse—2012 for count one and 2014 for count two."[59] But in 2012, Baugh lived at both Nibley Home and Falls Apartment.[60]

¶46   So the jury received evidence of the alleged instances of touching based only on location but was expected to connect these instances of touching to counts distinguished only by date. And although only those instances taking place at Nibley Home could have been connected to the first count, any of the three alleged instances could have been connected to the 2014 count because Baugh lived at both Nibley Home and Falls Apartment in 2014. Given that the jury acquitted Baugh on the 2012 count and

---

[55] *Strickland*, 466 U.S. at 693.

[56] *State v. Newton*, 2020 UT 24, ¶ 31, 466 P.3d 135 (cleaned up).

[57] *State v. Baugh*, 2022 UT App 3, ¶ 20, 504 P.3d 171.

[58] *Id.*

[59] *Id.*

[60] *Id.* ¶ 21.

convicted him on the 2014 count, its verdict didn't resolve the risk that some jurors convicted based on an act that took place at Nibley Home, while others convicted based on an act that occurred at Falls Apartment.

¶47 Next, the court of appeals considered Baugh's "confessions" and his explanation of them at trial. During the investigation, Sasha called Baugh to confront him about the abuse.[61] The State argues that Baugh admitted to the abuse during the call saying, "if you say I did it, then—then I'm sure I did," and "I'm not going to deny it." Later, during interrogation, the detective asked Baugh if he had been abusing Sasha for years, to which he replied, "For years[?] Okay. No." The State paints that as another admission. And when asked when he last abused Sasha, Baugh said it was "at the Nibley [Home]." A third admission, according to the State.

¶48 But, as the court of appeals noted, Baugh's statements during the confrontation call and subsequent interrogations do not amount to an unequivocal confession.[62] During the confrontation call, interrogation, and at trial, Baugh maintained that he had not abused Sasha. And he offered testimony at trial that his "admissions" were simply an attempt to validate his daughter's feelings despite her "getting things mixed up."

¶49 Finally, the court of appeals considered the State's closing argument, where the prosecutor told the jurors that the "two counts can be fulfilled with . . . any two of those experiences" described at trial and that "any two of those incidents . . . can be the elements of both of these counts."[63]

¶50 Reviewing the evidence as a whole, the court of appeals concluded that its "confidence in the outcome ha[d] been undermined."[64] Because the jury was instructed on the counts based on the dates of the alleged instances but was only given evidence of the counts based on the location of those instances, the court reasoned, there was "a reasonable probability that the jurors

---

[61] *See id.* ¶ 22.

[62] *Id.* ¶¶ 22–24.

[63] *Id.* ¶ 25.

[64] *Id.* ¶ 26.

did not agree on which act of alleged abuse supported each count."[65]

¶51 And, relevant to the State's claim that the court of appeals did not consider whether the jury would have come to a different conclusion absent counsel's errors, the appellate court explained that it was not confident that the jury would have come to the same conclusion if it had received more specific unanimity instructions.[66] And it noted that the evidence presented was not overwhelmingly stronger for either of the two counts.[67] Further, despite some evidence that Baugh had confessed, his explanation of his statements created the possibility that a reasonable jury could have found his "confession" unconvincing.[68] Therefore, the court of appeals concluded, it could not "identify one charge on which [it could] say with confidence [the jury] would have convicted."[69] As such, the court found "a reasonable probability that but for defense counsel's" failure to request more specific unanimity instructions, "the proceeding's outcome would have differed."[70]

¶52 The court of appeals applied the correct standard in its analysis of the prejudicial effect of counsel's error, considered the totality of the evidence presented at trial, and correctly concluded that there was a reasonable probability of a different outcome had defense counsel requested more specific unanimity instructions.

## CONCLUSION

¶53 In order to succeed on his claim of ineffective assistance of counsel, Baugh had to show that his counsel's performance was deficient and that the deficient performance prejudiced him. The court of appeals correctly concluded that Baugh made those showings. Because the risk of non-unanimity was significant, and, given the state of the law regarding jury unanimity as to elements, Baugh's counsel performed deficiently by failing to request more specific unanimity instructions. Further, there was a reasonable

---

[65] *Id.* ¶ 21.

[66] *Id.* ¶ 24.

[67] *Id.* ¶ 22.

[68] *Id.*

[69] *Id.* ¶ 24.

[70] *Id.* ¶ 26.

probability that the jury would not have convicted Baugh had the error not occurred. Therefore, we hold that Baugh's counsel was ineffective and affirm the court of appeals' vacation of Baugh's conviction.

————————