2026 UT App 87

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KEVIN MICHAEL COLLARD,
Appellant.

Opinion
No. 20240532-CA
Filed June 4, 2026

Third District Court, Salt Lake Department
The Honorable Teresa Welch
No. 201906503

Emily Adams and Mikayla Irvin,
Attorneys for Appellant

Simarjit S. Gill and Kenneth Grigg,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

LUTHY, Judge:

¶1 Kevin Michael Collard was convicted on three counts of violating a protective order. He appeals, asserting that the district court erred by denying his motion to arrest judgment on two of the charges. Collard also asserts that his trial counsel (Counsel) rendered ineffective assistance by failing to object to the admission of an unredacted copy of the temporary protective order Collard was charged with violating.

¶2 We affirm the court's denial of Collard's motion to arrest judgment. We conclude, however, that Collard has established his

claim of ineffective assistance of counsel. We therefore reverse his convictions and remand the case for a new trial.

BACKGROUND[1]

*The Temporary Protective Order*

¶3     Collard and Olivia[2] married in 2018. In March 2020, the district court issued a temporary protective order against Collard and in favor of Olivia. The temporary protective order stated that the court had found "there [was] reason to believe" that Collard had "abused or committed domestic violence against [Olivia], or that there [was] a substantial likelihood that [Collard] immediately threaten[ed] [Olivia's] physical safety." The temporary protective order instructed Collard to "not have contact with [Olivia]," specifically directing him as follows: "Do not contact, phone, mail, e-mail, or communicate in any way with [Olivia] . . . either directly or indirectly except as allowed by the parent-time provisions of this order." The temporary protective order also instructed Collard to stay away from Olivia's residence and place of work. It further directed him "to return [Olivia's] passport to [her]," and it said that a law enforcement officer would assist in enforcing an order that Collard "[h]elp [Olivia] remove essential personal belongings from the home." The temporary protective order was set to expire on April 9, 2020, when a hearing before a court commissioner was scheduled to

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Liti*, 2015 UT App 186, ¶ 3 n.2, 355 P.3d 1078 (cleaned up). We do so "recognizing, however, that our reversal [Collard's] convictions causes the presumption of innocence to reattach." *State v. Yusuf*, 2025 UT App 189, n.1, 582 P.3d 1270 (cleaned up).

2. A pseudonym.

occur. The temporary protective order was served on Collard the day it was issued.

*Collard's Call to Home Depot on April 7, 2020*

¶4      On April 7, 2020, Collard called Olivia's place of work, the local Home Depot. Olivia was not at work at the time, and another Home Depot employee (Employee) answered the phone. Collard identified himself as Olivia's husband and, speaking of Olivia, told Employee, "I need to talk to her really bad. I miss her." Employee said he could "certainly give her the message" and that he would "have her call [Collard] back."

*The Permanent Protective Order*

¶5      Two days later, on April 9, 2020, Collard attended the scheduled hearing. At the conclusion of the hearing, the commissioner recommended "that the Protective Order [be] GRANTED and [that] it be made permanent." The district court adopted the commissioner's recommendation and issued a permanent protective order the same day.

*Collard's Calls to Home Depot on April 13, 2020*

¶6      On April 13, 2020, Collard called Home Depot again. Employee answered. Collard said, "I wish to speak to [Olivia]. I miss her very much. I have some things that I want to give to her." By this time, Employee had learned that Olivia had a protective order against Collard. Employee told Collard that Home Depot employees were "not allowed to speak with" him and that there was "to be no communication whatsoever with" Home Depot employees. Employee then ended the call.

¶7      A few minutes later, Collard called again, this time "to another assistant manager" at Home Depot. Employee was in the same room at the time, recognized Collard as the caller, "grabbed the phone," and said, "We have just had this conversation."

Collard responded by saying that he missed Olivia and wanted to talk to her. Employee replied, "Unfortunately, I am not allowed to talk to you. And we have to end the conversation."

### *The Charges and the Trial*

¶8    Two months later, Collard was charged with three counts of violating a protective order. The following year, Collard and Olivia divorced. Collard went to trial on the charges about three years later, in 2024.

¶9    On the first day of trial, prior to jury selection, Counsel informed the court that Olivia had alleged at some point that Collard had assaulted her but that the assault charge had subsequently been dismissed. Counsel asserted that the allegation of a prior assault by Collard was inadmissible under rule 404(b) of the Utah Rules of Evidence, and she indicated that if Olivia mentioned the assault allegation when she testified, Counsel would move for a mistrial. The court stated that the assault allegation had "no relevancy" to the charges in this case, but it declined to rule on the possibility of a mistrial if the allegation were mentioned during trial, saying, "I'm not going to make any decision right now, because we haven't even started this trial. I'll take that issue [up] if it comes up."

¶10    In its case in chief, the State called Olivia, Employee, and an officer who investigated Collard's calls to Home Depot (Officer) as witnesses. Olivia testified first. The prosecutor asked her why she had sought a temporary protective order against Collard. Olivia responded, "Because he threatened to kill me." Counsel immediately objected, asserting in a bench conference that Olivia's statement "[went] to prior bad acts." The court stated that the basis for the temporary protective order was not relevant to the charges and that it intended to "instruct the jury to strike the last answer." Counsel moved for a mistrial. The court declined to order a mistrial, but it cautioned that, moving forward, "nothing about the why of the protective order should be talked

about." It then instructed the jury to disregard both the prosecutor's last question and Olivia's response.

¶11 The prosecutor then showed Olivia a copy of the temporary protective order, and she identified it. Olivia testified that the temporary protective order "accurately portray[ed] the recommendations of the [c]ourt that [Collard] not contact [her] in any way." She further testified that Collard was "in court when [the temporary protective order] was issued" and that he was given a copy of it the same day. The prosecutor then elicited the following testimony from Olivia:

> Q. [D]id you go back at some point to make that temporary order final?
>
> A. Yes.
>
> . . . .
>
> Q. Okay. And was that done? Was it made final?
>
> A. Yes.
>
> Q. And did that final order of April 9, 2020, require [Collard] to not contact you by phone?
>
> A. Yeah.

A copy of the temporary protective order was then admitted into evidence without objection as part of the State's Exhibit 1. On the first page of that order, the court found that "there [was] reason to believe" that Collard had "abused or committed domestic violence against" Olivia or that there was "a substantial likelihood that [Collard] immediately threaten[ed] [Olivia's] physical safety." This finding was not redacted from the State's Exhibit 1, and Counsel made no request that it be redacted. The remainder

of that exhibit consisted of a certified copy of the docket in the protective order case. The docket entry for April 9, 2020, stated, "After hearing argument from both parties, [the] [c]ommissioner recommends . . . [t]hat [Olivia] has met the burden of proof by a preponderance of [the] evidence and that the Protective Order is GRANTED and it be made permanent." The State did not offer a copy of the permanent protective order into evidence.

¶12 The State then called Employee to testify. He related the facts recited above regarding Collard's calls to Home Depot.

¶13 Following Employee's testimony—and outside the presence of the jury—the court explained its reasons for denying Counsel's motion for a mistrial following Olivia's testimony that Collard had "threatened to kill" her. The court said that it had "decided that a curative instruction would be sufficient where [the court had] immediately instructed the jury to disregard the answer provided by [Olivia], as well as the question that was asked by the State." At this point, Counsel renewed her mistrial motion, arguing that Olivia's answer was "very prejudicial" and that "the jury [could not] unhear what was said." The court again declined to grant a mistrial but said that if anything regarding why the temporary protective order was issued was "brought up again, [the court would] grant the mistrial."

¶14 Officer then testified. When asked how he "got involved" in this case, Officer testified that he had been assigned to the case after Olivia reported Collard's call to Home Depot on April 7, 2020. Officer said that he spoke with Collard on April 8 and that "some parts of [their] conversation" that day related to this case. Officer clarified, however, that on April 8 he "actually wasn't aware" that a report of Collard's alleged violation of the temporary protective order had been made. He explained that during their conversation on April 8, he and Collard "were talking primarily about another case." Counsel objected to this statement. She noted that the court had "made clear that [the parties were]

not to bring[] up past incidents," and she again moved for a mistrial. The court did not grant a mistrial but said that if the mention of "anything related to . . . another case" "happen[ed] one more time," it would grant a mistrial. The court then instructed the jury to disregard the prosecutor's last question and Officer's response.

¶15    Ultimately, the jury convicted Collard on all three counts of violating a protective order—one for his phone call to Home Depot on April 7, 2020, and two for his respective phone calls to Home Depot on April 13, 2020. Collard moved to arrest judgment as to the convictions for the April 13 calls on the grounds that the State had presented insufficient evidence that he violated the permanent protective order, which was in effect on that day. Specifically, he argued that because the State did not offer a copy of the permanent protective order into evidence, the jury lacked evidence of its terms and, thus, lacked sufficient evidence to find that Collard violated those terms. The court denied Collard's motion to arrest judgment. Collard now appeals.

ISSUES AND STANDARDS OF REVIEW

¶16    Collard contends that the district court erred by denying his motion to arrest judgment because the State did not "present sufficient evidence to convict [Collard] of violating the permanent protective order." "We review a district court's grant or denial of a motion . . . to arrest judgment for correctness." *State v. Dew*, 2025 UT App 22, ¶ 27, 566 P.3d 53 (cleaned up), *cert. denied*, 568 P.3d 264 (Utah 2025). "A defendant appealing the denial of a motion . . . to arrest judgment has a substantial burden on appeal." *Id.* (cleaned up). "He or she must show that, when viewed in the light most favorable to the State, *no evidence existed* from which a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime." *Id.* (cleaned up).

¶17 Collard also asserts that he received ineffective assistance of counsel because Counsel failed to object to admission of "the court's finding in the temporary protective order that [Collard] had committed domestic violence or abuse against [Olivia] or that there was a substantial likelihood that he posed a threat to her safety." "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Alvarado*, 2023 UT App 123, ¶ 12, 538 P.3d 633 (cleaned up).[3]

ANALYSIS

I. Motion to Arrest Judgment

¶18 Collard appeals the denial of his motion to arrest judgment on his convictions for violating the permanent protective order on April 13, 2020. He contends that the State presented insufficient evidence to establish that he violated the terms of the permanent protective order. A person is guilty of violating a protective order if the person "intentionally or knowingly violates [the] order after having been properly served or having been present, in person or through court video conferencing, when the order was issued." Utah Code § 76-5-108(2)(b). Naturally, the State cannot prove that a person violated a protective order unless the State presents evidence of the relevant terms of the order the person is charged with violating. Here, Collard asserts that the State produced no evidence that could "prove[] beyond a reasonable doubt that the

_____

3. Collard also contends that the district court "abuse[d] its discretion when it denied [his] motion for a mistrial after [Olivia] testified to the grounds for the protective order"—namely, that Collard had "threatened to kill" her. Because we reverse Collard's convictions based on his ineffective assistance of counsel claim, we need not address the denial of his motion for a mistrial.

permanent protective order prohibited [Collard] from calling Home Depot." We disagree.

¶19 Olivia testified that the temporary protective order "accurately portray[ed] the recommendations of the [c]ourt that [Collard] not contact [her] in any way." From this testimony, the jury could reasonably infer that Olivia had seen the temporary protective order and was familiar with its terms. Olivia then testified that she "[went] back at some point to make that temporary order final" and that on April 9, 2020, "it was made final." And the docket from the protective order case, which was admitted into evidence, indicated that the permanent protective order was issued on April 9, 2020. From that docket and Olivia's testimony that the temporary protective order was made final on April 9, 2020, the jury could reasonably infer that the permanent protective order was simply the temporary protective order made permanent. *See generally State v. Law*, 2020 UT App 74, ¶ 14, 464 P.3d 1192 ("A reasonable inference is one that is drawn from the evidence and is based on logic and reasonable human experience." (cleaned up)). Based on that inference and the fact that the State offered the temporary protective order into evidence, the jury could reasonably infer that, like the temporary protective order, the permanent protective order directed Collard to "not contact, phone, mail, e-mail, or communicate in any way with [Olivia] . . . either directly or indirectly except as allowed by the parent-time provisions of [the] order." Accordingly, we are not persuaded that no evidence existed from which a reasonable jury could make a finding beyond a reasonable doubt as to the relevant terms of the permanent protective order.[4]

¶20 Collard resists this conclusion by citing rule 1002 of the Utah Rules of Evidence—commonly known as the "best evidence

---

4. Of course, the better practice in a case such as this would have been to offer a copy of the permanent protective order itself into evidence.

rule"—and asserting that "[i]n the ordinary course, a party can prove the contents of a document only by presenting the document itself into evidence." *See generally* Utah R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content, except as otherwise provided in these rules or by other rules adopted by the Supreme Court of this State or by statute."); *Krajeski v. Krajeski*, 2025 UT App 19, ¶ 47 n.9, 565 P.3d 544 ("The best evidence rule requires the party seeking to prove the contents of a document to introduce the document itself."), *cert. denied*, 574 P.3d 519 (Utah 2025). However, Collard did not raise the best evidence rule as part of his motion to arrest judgment. Collard's argument based on the best evidence rule is, therefore, unpreserved. "Because this is an unpreserved issue, we decline to consider it." *Hillam v. Hillam*, 2024 UT App 102, ¶ 40, 554 P.3d 1137 (cleaned up).

¶21   Collard also argues that after Olivia testified that the temporary protective order was made final, she was "asked about the specific terms of th[e] final order" and "only noted that it prohibited [Collard] from contacting her by phone." Because the evidence did not demonstrate that he contacted Olivia directly by phone, he argues that on this basis there was insufficient evidence to support the jury's verdict. However, Olivia was not asked to identify all of the terms of the permanent protective order. Rather, she was asked whether one specific term—i.e., one "requir[ing] [Collard] to not contact [her] by phone"—was included in the permanent protective order. Her affirmative answer to that question did not negate the reasonable inference that could be drawn from her earlier testimony, namely, that the permanent protective order contained the same no-contact terms as the temporary protective order, including the one requiring Collard to "not contact, phone, mail, e-mail, or communicate in any way with [Olivia] . . . either directly *or indirectly*." (Emphasis added). Thus, the jury could have reasonably found that Collard violated the permanent protective order by contacting Olivia indirectly when he called her place of work and told her coworker that he

missed her and wanted to talk to her. *Cf. State v. Fowers*, 2023 UT App 128, ¶¶ 13, 15, 538 P.3d 1274 (holding that there was sufficient evidence to bind the defendant over on a charge of violating a protective order directing him not to indirectly contact his ex-wife because a "factfinder could readily infer that calls [the defendant] placed to [his ex-wife's new husband] . . . would routinely and predictably be conveyed to" her).

¶22　For the foregoing reasons, we affirm the district court's denial of Collard's motion to arrest judgment.

## II. Ineffective Assistance of Counsel

¶23　Collard also asserts that Counsel provided ineffective assistance by failing "to object to prejudicial language in the temporary protective order." To prevail on a claim of ineffective assistance of counsel, Collard must show that (1) "[C]ounsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We address each of these prongs in turn.

### A.　Deficient Performance

¶24　Collard contends that Counsel performed deficiently "when she did not seek to redact" from the copy of the temporary protective order admitted into evidence at trial the finding that "there [was] reason to believe" that Collard had "abused or committed domestic violence against [Olivia], or that there [was] a substantial likelihood that [Collard] immediately threaten[ed] [Olivia's] physical safety." "To constitute deficient performance, Counsel's representation must fall below an objective standard of reasonableness." *State v. Baugh*, 2024 UT 33, ¶ 19, 556 P.3d 35 (cleaned up). We agree that Counsel's performance in this regard fell below an objective standard of reasonableness.

¶25　The finding in the temporary protective order that "there [was] reason to believe" that Collard had "abused or committed

domestic violence against" Olivia or that he otherwise posed an immediate threat to her safety clearly painted Collard in a bad light that had the potential to turn the jury against him. Moreover, by the time the State offered the temporary protective order into evidence, the district court had ruled that any allegation of a prior assault by Collard had "no relevancy" and, likewise, that the basis for the temporary restraining order was not relevant to the charges in this case. Thus, Counsel should have anticipated that the district court would have granted a motion to redact the damaging and irrelevant finding from the temporary restraining order. For these reasons, we conclude that reasonable counsel would have sought redaction of the objectionable finding from the version of the temporary protective order that was admitted into evidence.

¶26 The State counters by asserting that the "mere issuance of a protective order against a spouse [would have left] the jury to imagine all sorts of reasons why [a protective order] was issued," thus suggesting that Counsel may have made a tactical decision not to seek redaction of the reason for the temporary protective order so as to prevent the jury from speculating as to why it was issued. We are not persuaded. The finding that "there [was] reason to believe" that Collard "abused or committed domestic violence" against Olivia or that there was otherwise "a substantial likelihood that [he] immediately threaten[ed] [Olivia's] physical safety" confirmed that Collard posed a significant threat based on his past behavior, but it was sufficiently non-specific as to still allow the jury to assume the worst about Collard. In other words, rather than reduce the chances that the jury would speculate about Collard, it merely confirmed that the temporary protective order did not issue for relatively innocuous reasons.[5]

---

5. We do not mean to suggest that protective orders—when contested—may be obtained for innocuous reasons. After all, the

(continued…)

¶27    The State also argues that Counsel could have reasonably decided not to seek redaction so as "not to highlight the order itself by objecting to its contents." This argument is unavailing because Counsel could have sought redaction outside the presence of the jury.

¶28    For the foregoing reasons, we conclude that Counsel's failure to seek redaction of the finding that "there [was] reason to believe" that Collard "abused or committed domestic violence" against Olivia or that there was otherwise "a substantial likelihood that [he] immediately threaten[ed] [Olivia's] physical safety" constituted deficient performance.

---

finding in the temporary protective order at issue here largely mirrored the statutory prerequisite to an ex parte cohabitant abuse protective order, namely, that "it appear from [the] petition . . . that domestic violence or abuse has occurred" or "that there is a substantial likelihood domestic violence or abuse will occur." Utah Code § 78B-7-603(1). What we do mean to suggest is that lay jurors may not be aware of that statutory prerequisite. Moreover, some jurors might be aware that Utah law allows for no-fault protective orders in certain circumstances, *see id.* § 78B-7-603(4), and for stalking injunctions without a finding of prior abuse or threat of physical harm, *see id.* §§ 76-5-106.5(2), 78B-7-701(4). Thus, specifically confirming that the protective order in this case was issued based on a reason to believe that Collard had already abused or committed domestic violence against Olivia or that there was otherwise a substantial likelihood that he immediately threatened her physical safety cast Collard in a less favorable light than if the jury was not informed of the basis for the order. And the district court had already signaled an effective willingness to make the redaction, given its previous caution that "nothing about the why of the protective order should be talked about."

B.     Prejudice

¶29     Collard contends that he was prejudiced by Counsel's deficient performance. "Prejudice is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, thus undermining confidence in the outcome." *Martin v. State*, 2024 UT App 89, ¶ 18, 552 P.3d 758 (cleaned up), *cert. denied*, 561 P.3d 692 (Utah 2024).

¶30     Here, Collard argues that the evidence against him "was not overwhelming." He notes that although he was prohibited from contacting Olivia "directly or indirectly," the jury was not provided with a definition of "indirectly." Thus, Collard argues, because he did not ask during any of his calls to leave a message for Olivia, the jury could have reasonably found that his calls to Home Depot "did not constitute indirect contact in violation of the temporary protective order."[6] Collard then contrasts—as follows—the asserted weakness in the evidence that he impermissibly indirectly contacted Olivia with the potential effect on the jury of the finding in the temporary protective order that there was reason to believe that he had engaged in domestic violence or abuse against Olivia or that there was a substantial likelihood that he immediately threatened her safety:

> [T]he conduct the temporary protective order found that [Collard] had engaged in—domestic violence or abuse—was far more severe than the conduct the State alleged he had engaged in: calling a store and telling a store employee that he missed his ex-wife. By stating that a court had found that [Collard] had

---

6. The strength of Collard's argument in this regard is enhanced with respect to at least one of the charges by the fact that (1) the temporary protective order directed him to return Olivia's passport to her and (2) he stated in his second call to Home Depot that he had "some things that [he] want[ed] to give to [Olivia]."

abused [Olivia], or was substantially likely to do so, the temporary protective order portrayed [Collard] as a dangerous and threatening individual. The jury could have viewed [Collard] as such and reached a guilty verdict to punish [Collard] and protect [Olivia].

¶31 The State offers no response to Collard's argument on the prejudice prong of the test for ineffective assistance of counsel. "When an appellee fails to present us with any argument, an appellant need only establish a prima facie showing of a plausible basis for reversal. This is a lower standard than the typical burden of persuasion on appeal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (cleaned up); *see also State v. Rynhart*, 2025 UT App 148, ¶¶ 50–57, 585 P.3d 57 (applying the *AL-IN* standard to a discrete argument that stood "uncontested on appeal because the State did not respond to [the] argument in its brief"), *cert. denied*, 585 P.3d 48 (Utah 2026). Here, we conclude that Collard's foregoing argument amounts to a prima facie showing of a plausible basis for a determination that he was prejudiced by Counsel's deficient performance.

¶32 In sum, because (1) Counsel rendered deficient performance, (2) Collard has made a prima facie showing of a plausible basis for concluding that he was prejudiced by Counsel's deficient performance, and (3) the State has not rebutted Collard's prejudice argument, we conclude that Collard has established his ineffective assistance claim.

## CONCLUSION

¶33 We affirm the district court's denial of Collard's motion to arrest judgment. We conclude, however, that Collard has established his claim of ineffective assistance of counsel. On this basis, we reverse his convictions and remand the case for a new trial or such other proceedings as may now be appropriate.

———————